## BERNARD HUEBSCH v. EARL LARSON AND ANOTHER.

191 N. W. (2d) 433.

October 29, 1971—Nos. 42698, 42776.

*Weis & Frauenshuh* and *Dale E. Parker,* for appellant.

*Johnson, Schmidt, Thompson, Lindstrom & Thompson* and *John C. Lindstrom,* for respondents.

Heard before Knutson, C. J., and Otis, Peterson, Kelly, and Rolloff, JJ.

KELLY, JUSTICE.

In this action for the conversion of some calves, the jury returned a verdict for $380 in compensatory damages and $750 in punitive damages, but in response to a post-trial motion by

defendants, Mr. and Mrs. Earl Larson, the trial court ordered judgment notwithstanding the verdict for compensatory damages only. Plaintiff, Bernard Huebsch, appeals from the court's order and from the judgment. The issues are: (1) Whether the issue of punitive damages was properly raised in the complaint; (2) whether there is sufficient evidence in the record to justify submitting punitive damages to the jury. We reverse and hold that the complaint properly raised the issue of punitive damages and there was sufficient evidence for the jury to award punitive damages.

Plaintiff and defendants are operators of farms near Kandiyohi. Plaintiff had some small calves in a field with an electric fence around it. Around May 28, 1969, three of the calves strayed onto defendants' land. Defendants fed and watered the calves for 9 days while they contacted some of their neighbors to inquire whether they had lost or knew of anyone who had lost the calves. Defendants did not find the owner. Mr. Larson testified that he contacted four or five neighbors, but a deputy sheriff, Larry Kleinhuizen, testified that when he talked with Mr. Larson, he was told that only one neighbor was contacted in order to find the owner of the calves.

On June 6, 1969, defendants took the 3 calves to Belgrade, which was 27 miles from their farm, and left them at a barn belonging to a livestock buyer with a note stating that they wanted $150 for the calves. A few days later the buyer agreed to this price and sent his check to defendants. Defendants testified that they took the calves to Belgrade instead of Willmar, which was only 6 miles from their home, because they had been unable to finish their chores in time to go to Willmar on the day that the sales barn in Willmar was open.

Around June 10, 1969, Larson was told that plaintiff had lost some calves but he made no effort to contact plaintiff. On June 14, plaintiff went to defendants' home three times to inquire about his calves. On the third time he contacted Mrs. Larson and she told him that the calves had been at their place for 9 days

and had then left. On June 17 or 18, Mr. Larson heard an announcement on the Willmar radio station that someone had lost some calves but he was busy doing chores in the barn so he did not write down the telephone number. No attempt was made to contact the radio station and obtain the name or telephone number of the party that had lost the calves. Only after the deputy sheriff came to defendants' home on June 19 and told them to contact plaintiff, did the defendants visit plaintiff and tell him that they had found three calves and had sold them.

■ Plaintiff's complaint alleges that "the action of the Defendants in converting for their own purpose the three calves was a willful tort entitling Plaintiff to punitive damages." In Vine v. Casmey, 86 Minn. 74, 76, 90 N. W. 158 (1902), this court said:

"* * * It is not necessary in such cases for the plaintiff in his complaint specifically to claim exemplary damages nor to plead the evidence necessary to establish such a claim, but we do hold that he must allege, as an ultimate fact, the intent or purpose of the defendant in doing the alleged wrongful act; that is, that it was done wantonly or maliciously done, or with the purpose of oppressing or insulting the plaintiff, or that the defendant was wantonly negligent."

Plaintiff alleged that defendants in converting the calves committed a willful tort. In light of the fact that pleadings should be liberally construed, we think that the pleadings were sufficient to put defendants on notice that punitive damages were part of the case. This court in Vine v. Casmey, *supra,* was mainly concerned that defendants have a fair warning that the issue of punitive damages would be litigated. Defendants did have sufficient warning, as is clearly shown by the facts that defendants requested a certain instruction on punitive damages and that an objection to a question regarding defendants' assets was overruled on the ground that the question of punitive damages was a part of the case.

■ Defendants contend that the record does not contain sufficient evidence to justify submitting the issue of punitive damages to the jury. We have summarized the evidence on which plaintiff relies in support of his claim for punitive damages and have come to the conclusion that the trial court did not err in submitting the issue of punitive damages to the jury.

"As a general rule in Minnesota, punitive or exemplary damages are granted only for conduct which is malicious, wilful or in reckless disregard of the rights of others." Dixon v. Northwestern Nat. Bank (D. Minn.) 276 F. Supp. 96, 104 (1967). There is a strong policy against conversion of property. The strength of that policy is demonstrated by the fact that punitive damages may be recovered when the conversion is accompanied by a reckless disregard for the rights of others. We think the actions of defendants showed a willful and reckless disregard for the rights of plaintiff.

It is well settled that in actions of this type whether exemplary damages shall be allowed rests in the discretion of the jury under all the circumstances of the case. If there is any evidence warranting their allowance, its weight and force rest exclusively with the jury. Johnson v. Wolf, 142 Minn. 352, 172 N. W. 216 (1919). There was sufficient evidence to present a jury question on the issue of punitive damages and thus the trial court's order granting defendants' motion for a directed verdict on the issue of punitive damages is reversed and the case is remanded with directions that judgment be entered for plaintiff for the sum of $1,130, plus interest, costs and disbursements.

Reversed.