**Charles R. ROSENBLOOM, Respondent,**

v.

**Joel FLYGARE, et al., Petitioner, Appellants.**

No. C3–92–323.

Supreme Court of Minnesota.

June 4, 1993.

Michael O. Freeman, Hennepin County Atty., Karla F. Hancock, Sr. Asst. County Atty., Minneapolis, for appellants.

Jeffrey W. Thone, Saliterman & Siefferman, Minneapolis, for respondent.

Joseph D. Vass, Minneapolis, for amicus curiae MN Trial Lawyers Assoc.

Lawrence R. Altman, Minneapolis, for amicus curiae Mpls. Urban League.

COYNE, Justice.

Charles R. Rosenbloom brought this action against Joel Flygare, a deputy sheriff, and Hennepin County, Flygare's employer, alleging a common law battery and also alleging a violation of Minn.Stat. § 363.03, subd. 4(1) (1986), a section in the Minnesota Human Rights Act which declares it an unfair discriminatory practice "[t]o discriminate against any person in the access to * * * any public service because of race, * * *."

The jury found that Flygare had committed a battery on plaintiff Rosenbloom and that the battery had injured him. The jury then found that by reason of the battery, Rosenbloom had sustained damages of $3,693.90 for medical expenses; $30,000 for embarrassment and emotional distress; and $15,000 for pain, disability, and disfigurement. Having found that Flygare's acts showed a willful indifference to Mr. Rosenbloom's rights or safety, the jury determined that punitive damages of $65,000 were "necessary to punish the defendant, Joel Flygare, and deter others from the commission of like acts." Finally, the jury found that Flygare had discriminated against Rosenbloom "in the area of public service on the basis of race and that such discrimination caused injury to Rosenbloom."

On the basis of the special verdict the trial court ordered judgment for the compensatory and punitive damages deter-

mined by the jury and, in addition, awarded $2,000 for emotional distress and $6,000 punitive damages by reason of the unfair discriminatory practice. Pursuant to Minn. Stat. § 363.071, subd. 2 (1986), plaintiff requested attorney fees of $42,295.16; the trial court awarded fees in the amount of $23,928 and denied defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial or remittitur.

On appeal the court of appeals ruled that because the racial epithets were coupled with the beating, showing that racial animus provided motivation for the battery, the racial discrimination and the battery were inseparable and that recovery for both constituted double recovery. Both claims, the court of appeals held, arose from a single "course of conduct cognizable under the Human Rights Act." *Rosenbloom v. Flygare*, 487 N.W.2d 546, 549 (Minn.App.1992). Despite the plaintiff's express reservation of the right to elect which claim he wished to pursue if put to an election, the court of appeals treated the plaintiff's request for attorney fees as an election to proceed with the Human Rights Act claim. The matter was remanded to the trial court for recalculation of damages, including any compensable damages for battery authorized by the Minnesota Human Rights Act. Because we disagree with the analysis which prompted the court of appeals' remand, we reverse and reinstate the decision of the trial court as modified herein.

The events giving rise to this action occurred on May 27, 1987, when Charles Rosenbloom went to the Hennepin County Adult Detention Center to visit his brother, a detainee. Rosenbloom testified that at the window for the control area of the visitation center he gave Deputy Flygare his driver's license and said that he wanted to visit his brother, Akbar Abdullah. According to Rosenbloom, Flygare laughed and chanted the name; Flygare and his co-worker, Deputy Sigfrinius repeated the name, Akbar Abdullah, back and forth. Rosenbloom muttered, "What a bunch of assholes." Sigfrinius heard the remark, told Flygare that Rosenbloom had called him an asshole and asked if Flygare was "going to take that?"

Flygare told Rosenbloom he could not visit his brother. Rosenbloom stated that he told Flygare he considered his conduct racist and twice asked to see Flygare's supervisor, but Flygare responded that his supervisor was too busy and that Rosenbloom should leave. Another visitor, Janet Kraft, testified that when Flygare came out into the waiting area, Rosenbloom said, "You can arrest me if you want." Kraft said Flygare suddenly put a choke hold around Rosenbloom's neck, pulled his head back and put a knee into his back, and pushed him through the double doors leading into a secured corridor.

Rosenbloom testified that while in the corridor he was repeatedly struck on the sides and stomach, that he was twice thrown to the floor and against a wall, and that while lying on the floor, he could see the shoes of several deputies standing in a semi-circle around him.

Rosenbloom and an inmate of the jail testified that Rosenbloom was addressed as "boy" and several times called "nigger" while a deputy jerked him toward a cell. Rosenbloom said he remained silent during the entire episode.

Both the trial court and the court of appeals based their decisions on *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374 (Minn. 1990), in which this court held that separate causes of action lie for common law battery and for sexual harassment in violation of the MHRA. While the court of appeals appears to have misapprehended the double recovery limitation articulated in *Wirig*, 461 N.W.2d at 379, our review of the record in the present case convinces us that both the plaintiff and the trial court made a concerted effort to comply with the *Wirig* admonition—first, that when a common law battery claim and a claim of an unfair discriminatory practice violative of the MHRA arise from the same set of operative facts, the claims must be made separately; and then, that in order to recover punitive damages for battery, in addition to those punitive damages recoverable under

the MHRA, the plaintiff must show by clear and convincing proof that the misconduct on which the common law action is based differs in kind from that on which the MHRA claim rests.

Despite Wirig's innovative approach—bringing both a common law action for battery and an action pursuant to the MHRA for sexual harassment—Wirig did not, and perhaps could not, demonstrate by clear and convincing proof that the battery and the sexual harassment were different enough to justify two separate awards of punitive damages. The statutory definition of sexual harassment includes unwelcome sexually motivated physical contact that has the purpose or effect of substantially interfering with an individual's employment, Minn.Stat. § 363.01, subd. 41 (1992). In *Wirig* the offensive physical contact which constituted the battery—kissing, patting, and putting an arm around the complainant—was not offensive because it caused physical injury; it was offensive because it was sexually motivated contact to which Wirig did not consent.

In the present case, however, the battery was actionable not simply because it was racially motivated but because, as the jury found, Rosenbloom was physically injured. That the battery was racially motivated undoubtedly exacerbated Rosenbloom's embarrassment and emotional distress; but the fact that a beating was administered by law enforcement officers, who are duty-bound to keep the peace, upon a man who has responded in rude and uncivil language to what he took to be racial discrimination, is itself evocative of embarrassment and emotional distress. In short, the battery was actionable with or without racial animus.

On the other hand, Rosenbloom's MHRA claim is that Flygare engaged in an unfair discriminatory practice: namely, that he discriminated against Rosenbloom "in the access to, admission to, full utilization of or benefit from any public service because of race, * * * " Minn.Stat. § 363.03, subd. 4 (1992), by refusing to permit Rosenbloom to visit his brother. The plaintiff went to some pains here to limit his proof of that claim to events which occurred at the counter where Flygare was stationed and to racial epithets, particularly to those uttered in the public waiting room.

■ As we pointed out in *Wirig, id.* at 379, "[W]e do not uphold double recovery for the same harm." However, inasmuch as compensatory damages for medical expenses and for pain, disability and disfigurement were awarded here only in the battery action, there can be no complaint that there has been double recovery for the same harm. Separately, as trier of fact in the battery action, the jury also found that the plaintiff had damages for embarrassment and emotional distress in the amount of $30,000. The trial judge, as finder of fact in the MHRA action, was aware of the jury's damage award in the battery action when he found that, in addition, Rosenbloom was entitled to $2,000 damages for mental anguish or suffering. Although these compensatory damage awards in the two actions are quite generous, it cannot be said that they represent a departure from the evidence of damages which would justify our interference with the fact-finding process.

The difficult aspect of this case is the method by which claims for punitive damages were asserted and resolved. About six months before trial, plaintiff noticed a motion to amend the complaint to assert a claim for punitive damages. Plaintiff's memorandum in support of the motion seems to be directed toward amendment of the MHRA claim only, as does his concluding request for relief. The parties agreed that the motion need not be argued at the settlement conference scheduled for the same date as the hearing on the motion. In correspondence which purported to memorialize the oral agreement, counsel for the defendants indicated her understanding that plaintiff only sought punitive damages available pursuant to the MHRA. Plaintiff's counsel responded that although they had discussed the several issues outlined in defense counsel's letter, except for the agreement that the motion to amend would not be argued at the settlement conference, he did not agree that her letter accurately

summarized his position. However, his letter contained no express reference to punitive damages in the battery action.

On the first day of trial, the plaintiff moved for the first time, orally and without prior notice, to amend the complaint to add a request for punitive damages in the battery action. The defendants argue that the trial court erred in granting the motion. We have always accorded the trial court considerable latitude in the disposition of requests to amend pleadings; here, given the parties' inability to agree on the scope of the former motion, the oral motion could not have come as a complete surprise, and the defendants did not request a continuance. Under these circumstances we are not persuaded that the trial judge abused his discretion by permitting the amendment. However, we must comment that because Minn.Stat. § 549.191 (1992) precludes the inclusion of a claim for punitive damages in the original complaint and requires a motion to amend to claim punitive damages to be made after the complaint has been filed, it seems to us better practice to notice a motion to amend and to specifically assert therein every claim for punitive damages sufficiently in advance of trial that the defendant is afforded adequate time in which to prepare a defense.

The manner in which punitive damages were submitted to the jury raises a more serious problem. The trial court submitted to the jury special verdicts directed to liability and compensatory damages on the battery claim and instructions to return an advisory verdict with respect to liability for violation of the MHRA. The question dealing with compensatory damages stated that it related only to the battery claim, but the separate question directing the jury to decide the amount of punitive damages, if any, necessary to punish defendant Flygare and deter others from "the commission of like acts" was not limited to the battery action. In all probability this defect in the special verdict could have been cured by an appropriate instruction. But the trial court compounded the problem by setting the instructions on punitive damages so that they followed immediately on the heels of the instructions relating to violation of the MHRA by racial discrimination. And although the trial judge properly instructed the jury that it could award punitive damages only if it found by clear and convincing evidence that Flygare's acts showed a willful indifference to the rights or safety of others, he did not instruct the jurors that they could *not* award punitive damages to punish defendant Flygare or to deter him, and others like him, from engaging in acts of racial discrimination even if they found that defendants had violated the MHRA by discriminating against Rosenbloom because of race when they refused to permit him to visit his brother. Therefore, we cannot tell whether the jury limited its deliberation on punitive damages to the battery claim, but the size of the punitive damage award suggests that it did not.

Ordinarily the size of an award of punitive damages provides little information about the particular aspect of defendant's conduct on which the jury based the imposition. In this case, however, the fact that the punitive damage award substantially exceeds the punitive damages requested by the plaintiff, coupled with the absence of any instruction limiting punitive damages to battery, leads us to conclude that the jury misunderstood its role with respect to punitive damages.

Minn.Stat. § 549.20 (1992) not only provides for the allowance of punitive damages in certain cases, it also mandates at subdivision 3 that any award of punitive damages is to be measured by "those factors which justly bear upon the purpose of punitive damages, * * *." One of the factors identified in the statute is "the financial condition of the defendant, * * *." *Id.* As we have previously observed,

> The purpose of punitive damages is to both punish and deter according to the gravity of the act giving rise to a punitive damage award, but an award should not exceed the level necessary to properly punish and deter.

*Melina v. Chaplin,* 327 N.W.2d 19, 20, fn. 1 (Minn.1982) (citations omitted). The jury

did not have before it any evidence of defendant Flygare's financial condition, but evidence of Flygare's annual gross and net income was presented to the trial court in connection with his motion for a new trial. That evidence discloses that the jury's punitive damage award is almost twice Flygare's annual gross income and a little more than 2½ times his annual take-home pay. Reprehensible though Flygare's conduct may have been, we are of the opinion that the amount of the punitive damages award simply exceeds any realistic appraisal of Flygare's ability to pay. *Id.* Accordingly, the trial judge should have ordered a $35,000 remittitur or, in the alternative, a new trial on damages.

The plaintiff would have us dismiss any consideration of Flygare's ability to pay because, he contends, Hennepin County will pay the punitive damages. The contention ignores the fact that there is a statutory prohibition against awarding punitive damages against a county. Minn.Stat. § 466.04, subd. 1 (1992). Accordingly, the order for judgment incorporating the punitive damages award is against defendant Flygare. And although Hennepin County defended Flygare pursuant to Minn.Stat. § 466.07, subd. 1 (1992) and has steadfastly asserted his innocence of malfeasance in office, willful neglect of duty, or bad faith, we cannot predict the county's position now that a jury has found that Flygare did commit a battery on Rosenbloom and that he did discriminate against Rosenbloom on the basis of race.

Moreover, it must be remembered that although judgment was ordered against both Joel Flygare and Hennepin County for all compensatory damages awarded in the two cases, punitive damages in both cases were awarded only against Flygare. Therefore, Flygare alone is liable to Rosenbloom for punitive damages. Hennepin County, on the other hand, if it has any liability with respect to punitive damages assessed against Flygare, is obligated only to indemnify Flygare—not to pay Rosenbloom.

Finally, punitive or exemplary damages are not compensatory and are not damages to which a plaintiff is entitled as a matter of right, but are imposed to punish the defendant and to deter him, and others like him, from intentional wrongs and deliberate disregard of the safety or rights of others. *See, e.g., Kirschbaum v. Lowrey,* 165 Minn. 233, 236, 206 N.W. 171, 173 (1925). Because the punitive purpose of punitive damages is lost when such damages are paid by another on the defendant's behalf, public policy is not served by permitting transfer of the responsibility for payment of punitive damages to another. For that reason we have been most reluctant to permit insurance against liability for punitive damages. *Wojciak v. Northern Package Corp.,* 310 N.W.2d 675, 680 (Minn.1981). Given the nature of punitive damages and the purpose for which they are assessed, the defendant's ability to pay is a factor worthy of consideration in the exercise of our supervision over such awards even if the defendant is ultimately to be indemnified by another. Certainly, our conclusion that the punitive damage award was based on the entire episode and was not confined to the battery provides ample reason for remittitur. Inasmuch as the issues of liability and compensatory damages were fairly tried, we decline to require a new trial on all issues; and we are similarly reluctant to require retrial of punitive damages only because the evidence of misconduct, already established, would have to be presented once again so that a jury could decide nothing more than its egregiousness. *See Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826 (Minn.1988).

Therefore, the decision of the court of appeals is reversed and the order of the trial court from which appeal was taken is reinstated except as modified here. We direct the district court to reduce the punitive damages award in the battery action to $30,000.

Reversed and trial court decision reinstated as modified.