**Jon SOUCEK, Appellant,**

v.

**Donald BANHAM, Jr., et al., Respondents.**

No. C3–94–1203.

Court of Appeals of Minnesota.

Nov. 29, 1994.

Review Denied Jan. 25, 1995.

Donald H. Nichols, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Surell Brady, Minneapolis City Atty., Edward A. Backstrom, Asst. City Atty., Minneapolis, for respondents.

Considered and decided by PETERSON, P.J., and LANSING and HUSPENI, JJ.

## OPINION

PETERSON, Judge.

The issue in this case is the measure of damages a pet owner can recover when police officers shoot and kill a pet. The trial court determined that damages for the death of a pet are limited to replacement cost. We affirm.

## FACTS

Appellant Jon Soucek owned a dog he called Mack. One night, Mack got loose from Soucek's back yard and was later spot-

ted near downtown Minneapolis. Minneapolis police officers were called to the scene. The officers shot and killed Mack.

Soucek brought an action against the officers and the city of Minneapolis alleging negligence per se, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision. The claims for emotional distress were later dismissed.

Soucek moved to amend his complaint to include a claim for punitive damages. The trial court initially granted Soucek's motion. Shortly after the trial court's decision, however, the supreme court issued its opinion in *Independent School District No. 622 v. Keene Corp.*, 511 N.W.2d 728 (Minn.1994). In light of the *Keene* opinion, respondents brought a motion for reconsideration of the trial court's decision permitting the punitive damages claim. The trial court determined that *Keene* precluded punitive damages and reversed its decision.

Soucek also requested that the measure of compensatory damages include the intrinsic value of his dog as a pet. The trial court ruled that compensatory damages were limited to the replacement cost of the dog, which the parties had stipulated was no greater than $1500. Soucek was awarded $1500.

## ISSUES

I. Can a pet owner recover punitive damages when a pet is shot and killed by police officers?

II. Are compensatory damages for the death of a pet limited to replacement cost?

## ANALYSIS

In this case we must resolve an apparent conflict between two opinions of the supreme court. One opinion allowed the owner of a cat to recover punitive damages from a municipal animal warden who had the cat killed. *Wilson v. City of Eagan*, 297 N.W.2d 146, 150–51 (Minn.1980). A later opinion, upon which the trial court relied in this case, held that punitive damages cannot be recovered when the plaintiff only suffered property damage. *Independent Sch. Dist. No. 622 v.*

*Keene Corp.*, 511 N.W.2d 728, 732 (Minn. 1994).

In *Wilson*, a municipal animal warden lawfully impounded a cat. 297 N.W.2d at 150. However, within hours after impounding it, the warden had a police officer shoot and kill the cat in direct contravention of a municipal ordinance and state statute that required the cat to be held for at least five days before it could be destroyed. *Id.* at 150–51. The cat's owner sued the warden, the police officer, and a deputy police chief for compensatory and punitive damages. *Id.* at 148. A jury awarded compensatory and punitive damages against all three defendants but the trial court ruled that Minn.Stat. § 466.04, subd. 1a (1978) prohibited a punitive damages award against municipal employees for acts occurring in the performance of their duties. *Id.* at 148.

The supreme court concluded that Minn. Stat. § 466.04, subd. 1a allowed punitive damages against municipal officers and employees "where the harm complained of is the result of conduct done in malicious, willful, or reckless disregard for the rights of others," and reversed the trial court. *Id.* at 150, 152.

The supreme court did not specifically consider whether punitive damages should be limited to cases involving personal injuries. The court did, however, make the following policy argument favoring the allowance of punitive damages:

> [T]he potential for abuse of power by municipal officers and employees in ways that could cause harassment, invasion of privacy, or injury to property low in value is great. Although such abuses are presumably rare, when they occur compensatory damages are likely to be small and will not function to deter future similar conduct.

*Id.* at 150. This argument suggests that the supreme court intended to allow punitive damages against municipal employees even where the harm complained of is only property damage.

But allowing punitive damages when the plaintiff suffers only property damage was later expressly prohibited by *Keene*. 511 N.W.2d at 732. In *Keene*, a school district sued the manufacturer of fireproofing mate-

rial to recover the cost of removing the material from a school building after it was discovered that the material contained asbestos. *Id.* at 729. The district also sought punitive damages. *Id.* A jury awarded compensatory and punitive damages and the trial court allowed the punitive damages. *Id.* at 730.

On appeal to the supreme court, citing *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 228–29 (Minn.1982), the manufacturer argued that punitive damages cannot be awarded in the absence of personal injury. *Keene,* 511 N.W.2d at 732. The district argued that *Eisert* applied only to strict products liability claims and therefore did not apply to its case because it also brought claims under other liability theories. *Keene,* 511 N.W.2d at 732.

The supreme court determined that the district could not recover punitive damages. *Id.* The supreme court stated:

> We do not find [the additional liability theories] to be a sufficient distinguishing factor to limit the application of our reasoning in *Eisert.* As in *Eisert,* the school district here only suffered property damage. The remedy of punitive damages concerns the "vital state interest of protecting persons against personal injury." We believe now as we did in *Eisert* that denying punitive damages where a plaintiff only suffers property damage reflects the greater importance society places on protecting people.

*Id.* (citation omitted) (quoting *Gryc v. Dayton–Hudson Corp.,* 297 N.W.2d 727, 737 (Minn.), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980)).

The supreme court specifically held in *Keene* that, regardless of the liability theory, punitive damages are not allowed where a plaintiff suffers no personal injury. *Id.* *Keene* was decided after *Wilson.* Therefore, although Soucek's injury cannot be distinguished from the injury suffered by the plaintiff in *Wilson,* we conclude that the rule later established by the supreme court in *Keene* prohibits Soucek from recovering punitive damages because he suffered no personal injury.

Also, although the policy argument the supreme court made in *Wilson,* 297 N.W.2d at 150, regarding the role punitive damages play in curbing the abuse of power by municipal officers and employees remains persuasive, the same argument can be made about other potential tortfeasors. We see no reason why the general rule prohibiting punitive damages when the plaintiff suffers no personal injury should not be applied simply because the alleged tortfeasor is a municipal employee.

The dissent concludes that *Keene* denies recovery of punitive damages only when the plaintiff is injured by a product. In *Keene,* the supreme court concluded "that denying punitive damages where a plaintiff only suffers property damage reflects the greater importance society places on protecting people." 511 N.W.2d at 732. Given the supreme court's rationale in *Keene,* we see no basis for distinguishing tortious conduct in the production or distribution of a product from other tortious conduct. It is frequently only fortuitous that a product causes property damage without also causing personal injury. It is not apparent why a tortfeasor whose product fortuitously causes only property damage should avoid punitive damages when a tortfeasor whose conduct is not associated with a product, but causes only property damage, should not.

Particularly in light of the facts in *Keene,* we see no basis for treating product cases differently. In *Keene,* the school district had to remove asbestos insulation from its building only because the asbestos was a hazard to human health. *Id.* at 729. The defendant's conduct created a health hazard for occupants of the building and the sole reason why the district suffered damage was that it had to remove the hazard. *Id.* at 729–31. In spite of the fact that the product created a health hazard for humans, the supreme court clearly stated that, regardless of the liability theory, punitive damages were not allowed in the absence of personal injury. *Id.* at 732.

If punitive damages could not be recovered in *Keene* when a defective product had to be replaced solely because it created a health hazard for humans, we see no basis for permitting punitive damages when tortious con-

duct damages property without creating a risk of personal injury. Permitting punitive damages under these circumstances would not serve the deterrent purpose of protecting persons against personal injury.

Finally, in *Eisert* the supreme court stated

Although the nature of the plaintiff's injury is not always listed as a factor in determining how to assess punitive damages, it may reasonably be taken into account in deciding where punitive damages will be allowed. Where that injury is limited to property damage, the public interest in punishment and deterrence is largely satisfied by the plaintiff's recovery of compensatory damages.

314 N.W.2d at 229 (citations omitted). When the supreme court prohibited punitive damages in *Keene,* it did so because the plaintiff suffered no personal injury. 511 N.W.2d at 732. The dissent correctly states that courts generally award punitive damages based on conduct rather than the consequences of conduct. Gary J. Haugen & Howard B. Tarkow, *Punitive Damages in Minnesota: The Common Law and Developments Under Section 549.20 of the Minnesota Statutes,* 11 Wm. Mitchell L.Rev. 353, 358 (1985). However, the supreme court concluded in *Keene* that the consequences of conduct may determine whether punitive damages will be allowed. 511 N.W.2d at 732.

## II.

Under Minnesota law dogs are personal property. *Corn v. Sheppard,* 179 Minn. 490, 492, 229 N.W. 869, 870 (1930). The proper measure of compensatory damages for destroying an animal is the fair market value of the animal. *Harrow v. St. Paul & D. R.R.,* 43 Minn. 71, 72, 44 N.W. 881, 881 (1890). Although Soucek conceded that fair market value is the generally accepted measure of compensatory damages for destroying a pet, he argues that Minnesota should adopt a measure of damages that includes the intrinsic value of the pet to the owner.

Soucek argues persuasively that pets have a special place in society. Unlike other personal property, pets provide companionship to their owners. When a pet is lost, its owner frequently cares least about the amount of money it will cost to replace the pet.

But Minnesota law treats pets as property. *Corn,* 179 Minn. at 492, 229 N.W. at 870. This court has an "obligation to decide cases in a manner consistent with existing law." *Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1 (Minn.App. 1990), *pet. for rev. denied* (Minn. Feb. 4, 1991). Intrinsic value of a pet to its owner is not currently included in damages that may be recovered for intentionally killing a pet. *See Harrow,* 43 Minn. at 72, 44 N.W. at 881 (fair market value is proper measure of compensatory damages for destroying animal).

## DECISION

Soucek cannot recover punitive damages for the loss of his pet because he only suffered property damage. Compensatory damages for the loss of Soucek's pet are limited to the fair market value of the animal.

**Affirmed.**

LANSING, Judge (dissenting).

The majority holds that punitive damages cannot be recovered on claims for damage to property in Minnesota. I agree that the supreme court's opinion in *Independent School Dist. No. 622 v. Keene Corp.,* 511 N.W.2d 728 (Minn.1994), can be broadly read to support this holding, but I don't think that this reading is the logical interpretation. Taken in context, I read the opinion as only limiting punitive damages for product-related damages.

First, the four sentences of the *Keene* analysis relied on by the majority must be read in light of the syllabus that states "[a]bsent personal injury, a party injured by a *product* may not recover punitive damages." *Id.* (emphasis added). In Minnesota, the syllabus is provided by the court and should be considered in interpreting the text. *See Winter Wolff & Co. v. Co-op Lead & Chem. Co.,* 261 Minn. 199, 206, 111 N.W.2d 461, 466 (1961) (author of Minnesota Supreme Court opinion also writes syllabus).

Second, *Keene* does not address or analyze the statute which specifically allows punitive

damages when clear and convincing evidence exists of willful indifference to the "rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1992). By including in its operative provisions rights as well as safety, the statute embraces both property damage and personal injury. No part of the statute excludes punitive damages on property claims.

Although an argument could be made that the supreme court has the power to limit a judicially-created remedy, I think such a limitation would require an analysis of the statute, particularly since the elimination of an entire category of punitive damages would be a restriction of common law remedies available at the time the statute codified punitive damages. *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 891–92 (Minn. 1986); *Minnesota–Iowa Television Co. v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297, 310–11 (Minn.1980).

Third, *Keene* does not analyze or refer to the substantial line of Minnesota authority allowing punitive damages for intentional property damage. *See, e.g., Wilson v. City of Eagan,* 297 N.W.2d 146, 150 (Minn.1980); *Huebsch v. Larson,* 291 Minn. 361, 364, 191 N.W.2d 433, 435 (1971); *Hendrickson v. Grengs,* 237 Minn. 196, 205, 54 N.W.2d 105, 110 (1952). Although there is a history of Minnesota case law limiting punitive damages for property damage in product cases, *see Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 229–30 (Minn. 1982), that limitation has not been applied to non-product cases. The product-related limitation on punitive damages is consistent with developments in other states. *See* Michael Rustad, *In Defense of Punitive Damages in Products Liability: Testing Tort Anecdotes with Empirical Data,* 78 Iowa L.Rev. 1, 6–7 (1992). Those states that have developed more general limitations on punitive damages have not created a division based solely on whether the injury is to person or property. *Id.* at 7–9.

Finally, creating a distinction that is based solely on whether the injury is to person or property is inconsistent with the philosophy of punitive damages as it has evolved in Minnesota. The two primary purposes of punitive damages are "to punish defendants

in appropriate cases and to set an example which will deter others from similar conduct." Gary J. Haugen & Howard B. Tarkow, *Punitive Damages in Minnesota: The Common Law and Developments Under Section 549.20 of the Minnesota Statutes,* 11 Wm. Mitchell L.Rev. 353, 356 (1985). Generally, courts award punitive damages based on a party's conduct rather than the consequences of its conduct. *Id.* at 358. To rest the availability of punitive damages solely on the type of injury contradicts the underlying philosophy because it focuses on the consequences of the actions rather than on the actual conduct. *Williams Pipe Line Co. v. City of Mounds View,* 704 F.Supp. 914, 921 (D.Minn.1989).

For these reasons, I dissent from that part of the opinion that interprets the *Keene* case as eliminating punitive damages on all property damage claims. I believe that *Keene* should be read to prohibit punitive damages only when a party suffers product-related property damage. *Keene* extends previous holdings by applying the prohibition to more than a strict liability tort action but still limits the prohibition to product-related property damage. If the supreme court intends to announce a broad rule that would prohibit punitive damages for all property damage claims, I believe that it would say so in a more explicit and definite manner.