Orville MOLENAAR, Appellant,

v.

UNITED CATTLE COMPANY, Defendant and Third-Party Plaintiff, Respondent,

v.

Michael J. FRANK, Third-Party Defendant.

No. C2–96–32.

Court of Appeals of Minnesota.

July 30, 1996.

Jerry W. Snider, Charles F. Webber, Faegre & Benson Professional Limited Liability Partnership, Minneapolis, for Defendant and Third–Party Plaintiff, Appellant.

Patrick McLaughlin, Todd C. Pearson, Dorsey & Whitney LLP, Minneapolis, for Respondent.

Considered and decided by LANSING, P.J., and PETERSON and HARTEN, JJ.

## OPINION

LANSING, Judge.

On appeal from the denial of posttrial motions in a livestock conversion action, we revisit the issue of punitive damages for property injury and review the jury determinations on liability and compensatory damages. We reverse and remand the entry of JNOV on punitive damages and affirm the district court's denial of JNOV on liability and its denial of JNOV, a new trial, or remittitur on compensatory damages.

## FACTS

A jury found United Cattle Company liable for converting Orville Molenaar's sixty-five heifers. The verdict awarded both compensatory and punitive damages. Molenaar had purchased the heifers in Montana in 1994 and transported them to Minnesota for feeding, care, and breeding at Michael Frank's farm. Frank and Molenaar had similar arrangements in previous years. Molenaar's cattle were identified by the blue ear tags they wore at the farm.

Frank also kept, cared for, and bred cattle for United Cattle Company. White and yellow ear tags identified United's cattle. United and Frank's relationship deteriorated and United brought a replevin action against Frank, alleging breach of contract and conversion of its cattle. The district court granted United a replevin order on October 11, 1994, authorizing United to take immediate possession of its cattle including 306 heifers. The next day Dana Hansen, vice president of United, arrived at Frank's farm to take possession of the cattle. Frank explained to Hansen that sixty-five of the heifers on the farm belonged to Molenaar, but Hansen took all of the cattle, including Molenaar's heifers.

Frank told Molenaar on October 16 that United had taken Molenaar's heifers. The next day Molenaar contacted United's attorney to find the cattle. The attorney refused to tell him where the cattle were kept. Molenaar sent the attorney a photograph of his heifers and a copy of his original purchase invoice. Molenaar, still attempting to locate the cattle, then contacted Hansen. Hansen also refused to tell Molenaar where the cattle had been taken. Neither the attorney nor Hansen asked for any documentation of ownership. United sold Molenaar's heifers on November 18, 1994, and they cannot be traced.

Molenaar sued United for conversion, alleging that its actions caused severe financial injury, and moved to amend his complaint to add a claim for punitive damages. The district court permitted the amendment, and the jury awarded $400,000 in punitive damages in addition to $59,375 in compensatory damages for conversion.

United moved for JNOV on liability, compensatory damages, and punitive damages. The district court granted JNOV on punitive damages, holding that these damages could only be recovered for personal injury. The district court denied the remainder of United's motions. Molenaar appeals the JNOV vacating punitive damages, and United cross-appeals the denial of JNOV on liability and compensatory damages.

## ISSUES

I. Are punitive damages recoverable for deliberate conversion of property?

II. Did the district court err by refusing to order JNOV, a new trial, or remittitur on the compensatory damages?

## ANALYSIS

Judgment notwithstanding the verdict is proper when a jury verdict has no reasonable support in fact or is contrary to

the law. *Diesen v. Hessburg*, 455 N.W.2d 446, 452 (Minn.1990), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1071, 1072, 112 L.Ed.2d 1177 (1991). Whether to grant a JNOV presents an issue of law, but the analysis admits every inference reasonably to be drawn from the evidence, and an order denying JNOV should stand unless the evidence is practically conclusive against the verdict. *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975). The district court has discretion in determining whether to grant a new trial, and will be reversed only for a clear abuse of discretion. *200 Levee Drive Ass'n v. Scott County*, 532 N.W.2d 574, 578 (Minn.1995).

## I

Punitive damages have been permitted in conversion actions since the formation of the state. *Huebsch v. Larson*, 291 Minn. 361, 364, 191 N.W.2d 433, 435 (1971); *Matteson v. Munroe*, 80 Minn. 340, 342–43, 83 N.W. 153, 154 (1900); *Lynd v. Picket*, 7 Minn. 184, 7 Gil. 128, 144–45 (1862); *Minnesota Valley Country Club v. Gill*, 356 N.W.2d 356, 363 (Minn.App.1984). Permitting punitive damages in these actions demonstrates the state's strong policy against malicious, willful, or reckless disregard of another's property rights. *Huebsch*, 291 Minn. at 364, 191 N.W.2d at 435.

Punitive damages "further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of N. Am. v. Gore*, —— U.S. ——, ——, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996). A substantial body of this state's jurisprudence on intentional torts has recognized punitive damages as a proper remedy for intentional violations of the rights of others. *See Huebsch*, 291 Minn. at 364, 191 N.W.2d at 435 (permitting punitive damages for conversion); *Jensen v. Peterson*, 264 N.W.2d 139, 145 (Minn.1978) (permitting punitive damages for fraud); *Bucko v. First Minn. Sav. Bank*, 471 N.W.2d 95, 98 (Minn.1991) (permitting punitive damages for polygraph testing); *Advanced Training Sys. v. Caswell Equip. Co.*, 352 N.W.2d 1, 10 (Minn.1984) (permitting punitive damages for libel); *Cobb v. Midwest Recovery Bureau*, 295 N.W.2d 232, 237–38 (Minn.1980) (recognizing punitive damages for some wrongful repossessions).

In addition to punitive damages as a remedy evolved through caselaw, the Minnesota legislature has specifically permitted punitive damages for misconduct that injures the rights of others.[1] Some states, including Minnesota, have limited legislatively created punitive damages in amount.[2] State legislatures have imposed other reforms, such as avoiding a windfall by requiring the punitive damages to be paid to the state rather than a litigant.[3]

---

1. *See, e.g.*, Minn.Stat. § 47.69, subd. 5 (1994 & 1995 Supp.) (violations of consumer privacy laws); Minn.Stat. § 176.138(d) (1994 & 1995 Supp.) (violations of medical data privacy laws); Minn.Stat. § 176.82, subd. 1 (1994 & 1995 Supp.) (obstruction of workers' compensation benefits); Minn.Stat. § 259.37, subd. 3 (1994) (adoption agency rule violations); Minn.Stat. § 325B.08 (1994) (bad faith by beer brewers); Minn.Stat. § 325F.63, subd. 1 (1994) (violations of consumer protection laws); Minn.Stat. § 332.60 (1994) (credit reporting errors); Minn. Stat. § 462.358, subd. 4a (1994) (incomplete disclosure by seller of real estate); Minn.Stat. § 504.20, subd. 7 (1994) (bad faith retention of a security deposit); Minn.Stat. § 515A.4–115 (1994) (violations of the Uniform Condominium Act); Minn.Stat. § 570.094 (1994) (withholding attached property); Minn.Stat. § 626.556, subd. 5 (1994 & 1995 Supp.) (false reports of child abuse); Minn.Stat. § 626.557, subd. 6 (1994 & 1995 Supp.) (false reports of maltreatment of

vulnerable adults); Minn.Stat. § 626A.13, subd. 2(2) (1994) (wiretapping).

2. *See, e.g.*, Minn.Stat. § 3.736, subd. 4 (1994) (limiting total damages award against the state to $200,000 per claimant); Conn. Gen. Stat. § 52–240b (1995) (limiting punitive damages in products-liability cases to twice the amount of compensatory damages); Kan. Stat. Ann. § 60–3702(e) (1994) (limiting punitive damages to the lesser of plaintiff's annual income or five million dollars); Okla. Stat. Ann. tit. 23, § 9.1 (West 1996 Supp.) (limiting some punitive damages according to three categories of claims).

3. *See, e.g.*, Minn.Stat. § 363.071, subd. 2 (1994) (awarding civil penalty for discrimination actions to the state); Ga.Code Ann. § 51–12–5.1(e)(2) (1996 Supp.) (awarding three-fourths of punitive damages to the state); Mo. Ann. Stat. § 537.675, subd. 2 (Vernon 1988 and 1996 Supp.) (awarding one-half of punitive damages to tort victims' fund); Or.Rev.Stat. § 18.540(1)(b) (1995) (sixty percent of punitive damage award to the state).

In 1980 the supreme court extended the scope of punitive damages in Minnesota to include strict products-liability cases. *Gryc v. Dayton–Hudson Corp.*, 297 N.W.2d 727, 741 (Minn.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). This extension shifted the focus from a defendant's conduct to the severity of a plaintiff's injuries and removed the requirement of clear and convincing evidence of willful indifference to the rights or safety of others. In 1982 the court limited this expansion by prohibiting punitive damages in strict products-liability cases absent personal injury. *Eisert v. Greenberg Roofing & Sheet Metal*, 314 N.W.2d 226, 229 (Minn.1982) (noting the "extraordinary measure of deterrence" of punitive damages in strict liability cases).

The court subsequently applied this limitation to all products-liability claims whether or not the cause of action was based on strict liability. *Independent Sch. Dist. No. 622 v. Keene Corp.*, 511 N.W.2d 728, 732 (Minn. 1994) (denying punitive damages for asbestos cleanup). The court looked beyond the formal pleadings and restricted punitive damages stemming from products liability to circumstances involving personal injury. *Id.*

■ This approach to punitive damages in products-liability claims mirrors the supreme court's analysis of punitive damages for breach of contract. Traditionally, punitive damages were not available for breach of contract. *Minnesota–Iowa T.V. Co. v. Watonwan T.V. Improvement Ass'n*, 294 N.W.2d 297, 309 (Minn.1980). But when an independent tort accompanies a breach of contract, a plaintiff may seek punitive damages. *Id.* The supreme court looks beyond the formal pleadings and limits punitive damages to those cases involving a willful independent tort, not merely willful breach of contract. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 52 (Minn.1983). The focus falls on the underlying tort, rather than the nature of damages or the specific legal pleadings. *See Cherne Indus. v. Grounds & Assocs.*, 278 N.W.2d 81, 95–96 (Minn.1979) (assessing evidence of tortious interference with contract).

In *Soucek v. Banham*, 524 N.W.2d 478, 480 (Minn.App.1994), *review denied* (Minn. Jan. 25, 1995), a divided panel of this court broadly interpreted *Keene* to prohibit punitive damages in any case not involving personal injury. But since the issuance of *Soucek*, the supreme court has decided and affirmed an age discrimination case that allowed punitive damages even though the complaint did not allege personal injury. *Phelps v. Commonwealth Land Title Ins.*, 537 N.W.2d 271, 277 (Minn.1995).

■ We read the supreme court's affirmance in *Phelps* as consistent with the substantial body of Minnesota law permitting punitive damages for deliberate or willful indifference to the rights or safety of others and as limiting the language in *Keene* to products-liability actions. Thus, *Keene* stands for the proposition that "[a]bsent personal injury, a party *injured by a product* may not recover punitive damages." *Keene*, 511 N.W.2d at 728 (emphasis added).

■ Limiting *Keene* to product-related injury also reestablishes consistency between case law and statutory law. The statute governing punitive damages, enacted in 1978, provides that "[p]unitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1994). The statute codified existing law. *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 891 (Minn. 1986). Punitive damages for property injury continued to be available after enactment of the statute. *See Vikse v. Flaby*, 316 N.W.2d 276, 286 (Minn.1982) (permitting punitive damages for fraud).

In addition to authorizing punitive damages in civil actions, the statute specifically permits punitive damages for "deliberate disregard for the *rights* or safety of others." Minn.Stat. § 549.20, subd. 1 (emphasis added). Violations of rights do not necessarily involve personal injuries. Conversion, for instance, generally violates property *rights* without personal harm to the owner. By including disregard of *rights* as well as disregard of safety, the statute permits punitive damages for both property damage and personal injury. Any court decision that abol-

ished punitive damages for disregarding the rights of others would eviscerate the statute.

 Finally, this reading is consistent with the philosophy that underlies punitive damages. The purpose of punitive damages is "to both punish and deter according to the gravity of the act giving rise to a punitive damage award * * *." *Rosenbloom v. Flygare,* 501 N.W.2d 597, 601 (Minn.1993) (quoting *Melina v. Chaplin,* 327 N.W.2d 19, 20 n. 1 (Minn.1982)). Punitive damages "are imposed to punish the defendant and to deter him, and others like him, from intentional wrongs and deliberate disregard of the safety or rights of others." *Id.* at 602. The focus lies on the defendant's wrongful conduct that must be deterred, not the specific outcome of the conduct.

Punitive damages implement this philosophy by economically deterring wrongful interference with the rights of others. Absent punitive damages, criminal prosecution and tainted goodwill remain the only sanctions moderating the conduct of individuals or companies that would seek to wrongfully deprive others of their property through fraud or trickery. *See Gore,* —— U.S. at ——, 116 S.Ct. at 1599 ("exemplary damages imposed on a defendant should reflect 'the enormity of his offense.' *Day v. Woodworth,* 54 U.S. (13 How.) 363, 371, 14 L.Ed. 181 (1852). * * * '[T]rickery and deceit' are more reprehensible than negligence.") (quoting *TXO Prod. Corp. v. Alliance Resources,* 509 U.S. 443, 462, 113 S.Ct. 2711, 2722, 125 L.Ed.2d 366 (1993)). Absent punitive damages, one who intentionally and wrongfully takes another's property has little to fear. The worst civil consequence is that the converted property must be returned to its proper owner. Even this remedy must be discounted by the possibility that the owner will not seek legal recovery or will not prevail. Universal abolition of punitive damages for property damage dramatically improves the profitability of theft and diminishes society's reenforcement of personal accountability. Some states have restricted or otherwise restructured punitive damages, but we are aware of no state that has abolished punitive damages for injuries to property while allowing punitive damages for personal injury.[4]

4. *See, e.g.* Ala.Code § 6–11–20 (1993) (permitting punitive damages in tort actions with fraud or malice); Alaska Stat. § 09.17.020 (1994) (permitting punitive damages in contract or tort actions if supported by clear and convincing evidence); *Acheson v. Shafter,* 107 Ariz. 576, 490 P.2d 832, 835 (1971) (permitting punitive damages for conversion of property); *Wheeler Motor Co. v. Roth,* 315 Ark. 318, 867 S.W.2d 446, 450–51 (1993) (permitting punitive damages for false representation and breach of contract); Cal. Civ.Code § 3294 (West 1996 Supp.) (permitting punitive damages if evidence of fraud, oppression, or malice); Colo.Rev.Stat. Ann. § 13–21–102 (West 1987 & 1995 Supp.) (permitting punitive damages for injury to people or property, but limiting them to the amount of actual damages); Fla. Stat. Ann. § 768.73 (West 1996 Supp.) (limiting punitive damages to three times actual damages); Idaho Code § 6–1604 (1990) (permitting punitive damages for injury to property); Ill.Ann.Stat. ch. 735, para. 5/2–1207 (Smith–Hurd 1992) (permitting the district court to apportion some of the punitive damages to the state); Ind.Code Ann. § 34–4–34–4 (Burns 1996 Supp.) (limiting punitive damages to the greater of three times actual damages or $50,000); Iowa Code Ann. § 668A.1 (1987) (permitting punitive damages for disregarding rights or safety of others); Ky. Rev.Stat. Ann. § 411.186 (Michie/Bobbs–Merrill 1992) (permitting punitive damages for any civil action); *Ricard v. State,* 390 So.2d 882, 885 (La.1980) (punitive damages prohibited in Louisiana); *Flesner v. Technical Communications Corp.,* 410 Mass. 805, 575 N.E.2d 1107, 1112 (1991) (punitive damages prohibited in Massachusetts); *Joba Constr. Co. v. Burns & Roe, Inc.,* 121 Mich.App. 615, 329 N.W.2d 760, 773 (1982) (permitting punitive damages when actual damages would not fully compensate); Miss.Code Ann. § 11–1–65 (1995 Supp.) (permitting punitive damages except for breach of contract, libel, and asbestos litigation); Mont.Code Ann. § 27–1–220 (1995) (permitting punitive damages except in contract actions); Neb. Const. art. VII, § 5 (all fines and penalties must go to school fund); *Abel v. Conover,* 170 Neb. 926, 104 N.W.2d 684, 688 (1960) (punitive damages prohibited in Nebraska); Nev.Rev.Stat. § 42.005, subd. 1 (1995) (allowing punitive damages, but limiting their amount in certain cases); *Alper v. Western Motels,* 84 Nev. 472, 443 P.2d 557, 560 (1968) (upholding punitive damages in trespass action); N.H.Rev.Stat. Ann. § 507:16 (1995 Supp.) (punitive damages outlawed unless provided by statute); N.J. Stat. Ann. § 2A:15–5.14 (West 1996 Supp.) (permitting punitive damages, but restricting amount to the greater of $350,000 or five times compensatory damages); N.Y. Civ. Prac. L. & R. 8701 (McKinney 1996 Supp.) (twenty percent of punitive damage award to the state) (expired 1994); N.C. Gen.Stat. § 1D–25 (b) (1995) (limiting total amount of punitive damages); N.D. Cent.Code § 32–03.2–11, subd. 4 (1995 Supp.) (punitive damages may not exceed the greater of two times the compensatory dam-

In granting the JNOV vacating the punitive damages award, the district court relied on two alternative bases. First, the district court found that United's possession of a replevin order barred, as a matter of law, the jury's conclusion that United acted in deliberate disregard of Molenaar's rights. This analysis is flawed because the replevin order allowed United to seize and sell its *own* cattle, but it did not authorize them to seize and sell Molenaar's cattle. Hansen, who seized the heifers, testified that he believed the replevin order permitted him to seize only United's heifers. Hansen admitted that Frank told him some of the heifers belonged to Molenaar, that he knew Frank kept other farmers' cattle on his farm, and that Molenaar's heifers did not belong to United. Nonetheless, he never considered postponing the sale of the heifers to investigate or further consider Molenaar's claims.

The facts, taken in the light most favorable to the jury's verdict, demonstrate an intentional violation of property rights. Under these facts a replevin order could not insulate United from punitive damages for intentional conversion of Molenaar's heifers.

The alternative basis of attorney misconduct for JNOV on punitive damages is also deficient. During closing argument Molenaar's attorney referred to Hansen's statement that United was a wholly-owned subsidiary of United Market Services Company. This statement is supported by the record and does not constitute misconduct. Molenaar's attorney accurately highlighted Hansen's admission that United and United Market Services had identical corporate officers and directors. He noted that United did not possess its own bank accounts; all accounts were held by United Market Services. United did not object, and the statements were relevant because the proper amount of punitive damages depends, in part, on the financial strength of the defendant. *See* Minn.Stat. § 549.20, subd. 3 (listing factors).

We therefore reinstate the jury's determination that punitive damages are appropriate but remand to the district court to complete the statutory procedures. Punitive damages are an exceptional remedy and even when permitted must be reviewed by the district court. Minn.Stat. § 549.20, subd. 5. The district court must make specific findings on the misconduct's severity, profitability, duration, concealment, the defendant's awareness, attitude, and financial condition, the number of employees involved, and the effect of punitive damages. Minn.Stat. § 549.20, subd. 3. Consequently, we remand to the district court for the findings required by section 549.20.

## II

The record supports the district court's denial of JNOV on United's liability and compensatory damages. Conversion is an exercise of dominion over the property of another that deprives the owner of possession for an indefinite period of time. *Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955); *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn.App.1986). Wrongfully refusing to deliver property on

---

ages or $250,000); Ohio Rev.Code Ann. § 2315.21(B) (Anderson 1995) (permitting punitive damages for injury to property); *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648, 652 (1959) (punitive damages require actual damage and a viable cause of action); *Scully v. Matarese*, 422 A.2d 740, 741 (R.I.1980) (awarding punitive damages is within fact finder's discretion); S.C.Code Ann. § 15–69–210 (permitting punitive damages for conversion actions) (Law. Co-op 1976 & 1995 Supp.); S.D. Codified Laws Ann. § 21–3–2 (1987 & 1996 Supp.) (punitive damages in discretion of jury); *Gross v. Kouf*, 349 N.W.2d 652, 654 (S.D.1984) (upholding punitive damages in conversion action); Tenn.Code Ann. § 29–30–210 (1980) (jury may grant exemplary damages in personal property actions); Tex. Civ.

Prac. & Rem.Code Ann. § 41.003 (West 1996 Supp.) (allowing exemplary damages with requisite proof); Utah Code Ann. § 78–18–1(3) (1992 & 1995 Supp.) (fifty percent of punitive damages over $20,000 goes to the state); Va.Code Ann. § 8.01–38.1 (Michie 1992 & 1995 Supp.) ($350,000 cap on punitive damages); Wash. Rev.Code Ann. § 4.24.320 (West 1988) (permitting punitive damages, including injury to heifer owners, up to three times actual damages); *Fahrenberg v. Tengel*, 96 Wis.2d 211, 291 N.W.2d 516, 521 (1980) (permitting punitive damages for property injuries); *State Farm Mut. Auto. Ins. v. Shrader*, 882 P.2d 813, 825 (Wyo.1994) (permitting punitive damages for breaching implied covenant of good faith).

demand by the owner constitutes conversion. *Id.*

█ Hansen admitted that he took Molenaar's heifers after Frank told him Molenaar owned the blue-tagged heifers. Neither United nor its attorneys asked Molenaar for documentation of ownership, but Molenaar voluntarily sent them copies of his purchase invoices and an identifying photograph. Hansen admitted that he did not even consider postponing the sale of the heifers to investigate Molenaar's claims. Three weeks after Molenaar first asked United to return his heifers, United sold the heifers outside the state. These facts support the jury's verdict that United permanently deprived Molenaar of possession of his property.

United asserts that its refusal was only a qualified refusal, conditioned on Molenaar providing adequate proof of ownership. But United never asked for any proof of identification before the sale, and Hansen admitted that he never considered the proof of ownership that Molenaar submitted. The facts do not demonstrate a qualified refusal; they demonstrate an absolute refusal.

█ The measure of damages in conversion cases is generally the value of the property at the time of the conversion plus interest. *McLeod–Nash Motors, Inc. v. Commercial Credit Trust,* 187 Minn. 452, 460, 246 N.W. 17, 20 (1932); *McKinley,* 390 N.W.2d at 33. United disputes the sufficiency of the evidence to support the jury's $59,375 compensatory damage award.

The testimony indicated United took Molenaar's sixty-five heifers. Molenaar testified that the cattle were worth approximately $900 each. Frank testified that he sold comparable heifers around the time of the conversion for $875 each. Sixty-five heifers, each valued at $875, have a total worth of $56,875. United does not dispute Molenaar's additional claim for $2,500 in interest charges. The evidence produced at trial adequately supports the jury's verdict for $59,375 in compensatory damages. The district court did not err by denying United's motion for remittitur on compensatory damages.

United petitioned this court to strike portions of Molenaar's reply brief addressing whether the replevin order shielded United from punitive damages. *See State by Humphrey v. Ri–Mel, Inc.,* 417 N.W.2d 102, 110 (Minn.App.1987) (excluding review of issues raised for first time in reply brief), *review denied* (Minn. Feb. 17, 1988). Molenaar raised this issue in his initial brief, and the parties fully contested the issue in the district court. We deny United's motion to strike.

## DECISION

Because the district court erred by granting JNOV to reverse the jury's award of punitive damages, we reverse and remand for findings on punitive damages. We affirm the district court's denial of JNOV and a petition for a new trial on liability and denial of remittitur on compensatory damages.

**Affirmed in part, reversed in part, and remanded.**

PETERSON, Judge (dissenting).

I respectfully dissent from the majority's conclusion that punitive damages may be recovered for deliberate conversion of property even though the plaintiff suffered no personal injury. In *Independent School District No. 622 v. Keene Corp.,* 511 N.W.2d 728, 732 (Minn.1994), the supreme court specifically rejected the argument that the policy of prohibiting recovery of punitive damages unless the plaintiff suffers personal injury applies only to strict products liability actions. The supreme court said:

Keene next challenges the award of punitive damages to the school district. In *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 228 (Minn.1982), we held that punitive damages could not be recovered in a strict products liability action where the plaintiff only suffers property damage. Keene argues that the policy concerns underlying *Eisert* apply in this case, and therefore the school district's recovery of punitive damages should be barred.

The school district argues that *Eisert* only applies to strict liability claims, and, therefore does not apply to this case because the school district brought claims

under liability theories beyond strict products liability. We do not find this to be a sufficient distinguishing factor to limit the application of our reasoning in *Eisert.* As in *Eisert,* the school district here only suffered property damage. The remedy of punitive damages concerns the "vital state interest of protecting persons against personal injury." *Gryc v. Dayton–Hudson Corp.,* 297 N.W.2d 727 (Minn.), *cert. denied sub. nom. Riegel Textile Corp. v. Gryc,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). We believe now as we did in *Eisert* that denying punitive damages where a plaintiff only suffers property damage reflects the greater importance society places on protecting people. We reverse the award of punitive damages in its entirety.

*Id.*

Quoting from the syllabus of the supreme court's opinion in *Keene,* the majority states that *Keene* stands for the proposition that "[a]bsent personal injury, a party injured by a product may not recover punitive damages." *Id.* at 728. The majority interprets this statement to mean that a plaintiff who suffers no personal injury is prohibited from recovering punitive damages only when the plaintiff is injured by a product. Although this is a plausible interpretation of the syllabus language, it is equally plausible that, in the syllabus, the supreme court intended to do no more than simply apply to the case before it, which involved an injury caused by a product, a general rule that punitive damages cannot be recovered absent personal injury.

The body of the supreme court's opinion in *Keene* indicates that a plaintiff's right to recover punitive damages absent personal injury is not affected by the plaintiff's theory of liability. *Id.* at 732. If the theory of liability does not affect the right to recover punitive damages, I see no reason why the fact that a plaintiff is injured by a product, rather than in some other manner, should affect the right to recover punitive damages. Punitive damages are intended to punish particularly egregious conduct of the defendant. *Rosenbloom v. Flygare,* 501 N.W.2d 597, 602 (Minn.1993). There is no apparent reason why particularly egregious conduct involving a product should lead to any less serious consequences than egregious conduct that does not involve a product.

Furthermore, in *Eisert,* the supreme court stated:

> Although **the nature of the plaintiff's injury** is not always listed as a factor in determining how to assess punitive damages, it **may reasonably be taken into account in deciding where punitive damages will be allowed.** Where that injury is limited to property damage, the public interest in punishment and deterrence is largely satisfied by the plaintiff's recovery of compensatory damages.

314 N.W.2d at 228 (emphasis added) (citations omitted).

The emphasized language demonstrates that the rule established by the supreme court in *Eisert* is based upon the type of injury suffered by the plaintiff and does not depend upon the cause of the plaintiff's injury. The nature of the injury, not the cause of the injury, determines whether punitive damages are allowed.

Finally, the supreme court's holding in *Phelps v. Commonwealth Land Title Insurance Co.,* 537 N.W.2d 271, 276–77 (Minn. 1995), is not inconsistent with a rule that punitive damages may not be recovered absent personal injury. In *Phelps,* the plaintiff recovered $75,000 for mental anguish and suffering. *Id.* at 273. Mental suffering is a personal injury. *See generally* Michael K. Steenson, The Anatomy of Emotional Distress Claims in Minnesota, 19 Wm. Mitchell L.Rev. 1 (1993)(noting it is well-settled that damages for personal injury include a mental suffering component and discussing other causes of action where damages for mental suffering alone are recoverable).