GASTON COUTURE v. CLAIR NOVOTNY
AND ANOTHER.

211 N. W. 2d 172.

September 21, 1973—No. 43494.

*Garrity, Cahill, Gunhus, Streed & Grinnell* and *Paul E. Grinnell,* for appellants.

*Rufer, Hefte, Pemberton, Schulze & Sorlie* and *James L. Schulze,* for respondent.

Heard before Knutson, C. J., and Otis, Kelly, and Schultz, JJ. Reconsidered on the record by the court en banc.

KELLY, JUSTICE.

This action was brought to recover for personal injuries resulting from a head-on collision. After the trial court instructed that defendant driver was negligent as a matter of law, the jury found no negligence on the part of plaintiff and assessed damages at $25,000. Defendants appeal from the denial of their motion for a new trial. We reverse.

Defendants raise two issues on appeal: First, whether the trial court erred in failing to give a requested instruction concerning plaintiff's duty to mitigate damages through proper care and treatment of his injuries. Secondly, whether the verdict of $25,000 was excessive.

Plaintiff was injured on September 16, 1968, at approximately 4:30 a. m., near Rothsay, Minnesota, in a collision with an automobile owned by defendant Edward Novotny and driven by de-

fendant Clair Novotny. Plaintiff had been driving continuously since 9 a. m. the previous morning with periodic stops to rest. With the exception of head lacerations, plaintiff noticed no injuries. He was examined by a doctor after the accident but was not hospitalized. He noticed the initial indication of other injuries when he awoke the following morning with a stiff and weak left knee.

Plaintiff first contacted Dr. Evans about the knee condition about 2 days following the accident. Plaintiff's knee began causing more pain when he returned to work as a pipefitter and welder on heavy construction in Gillum, Manitoba, Canada. He continued to work at the construction project for 4 or 5 months, seeing Dr. Evans 2 or 3 times during this period. He was forced to terminate this employment when his work made it necessary for him to climb many steps daily, activity which caused his knee to swell and periodically dislocate.

After leaving Gillum late in January 1969, plaintiff was examined, upon the advice of his attorney, by Dr. K. W. Covey, an orthopedic surgeon in Moorhead, Minnesota. Dr. Covey diagnosed a cartilage injury to the undersurface of the left kneecap and estimated a 10-percent permanent disability for which surgery would not be corrective. The record does not show that Dr. Covey recommended any treatment for the condition.

Thereafter, plaintiff went to Toronto where he worked for only a week or two before quitting his job because of pain in his knee caused by climbing stairs. The following month, after his knee had recovered sufficiently, he worked at another job for about a month and a half. He did not see a physician while in Toronto.

From Toronto, plaintiff went to Illinois where he worked for about 8 months. While in Robinson, Illinois, plaintiff sought treatment for his knee from Dr. H. F. Iknayan on three or four occasions. This doctor diagnosed a cartilage injury and recommended support for the knee with an option for corrective surgery. Although unable to predict if the stability of plaintiff's

knee would progressively worsen, the doctor indicated he was apprehensive about plaintiff's doing work which required him to walk on unsupported steel.

Thereafter, plaintiff worked in New Jersey for 4 or 5 months before going to Harrisburg, Pennsylvania, where he was employed at the time of trial. In Harrisburg, he consulted Dr. Bruce Goodman, an orthopedic surgeon, who diagnosed a tear in the knee cartilage. Dr. Goodman stated that walking on steel beams was unsafe for plaintiff because of instability of his knee and that climbing stairs would cause swelling and locking. He recommended surgery which he estimated would cost $300 with hospitalization costing an additional $500. The period of hospitalization and outpatient therapy would vary with the patient, averaging several weeks. The doctor stated that any operation around a major joint is serious with potential complications and even a slight possibility of death. However, he also testified that the surgical complications for this operation are relatively rare occurrences, that the vast majority of patients come through without any complications, and that he would expect a rather successful result in the vast majority of cases. He also stated that the cartilage would not heal by itself. Plaintiff had previously had surgery, apparently successful, to remove torn cartilage in his other knee.

Defendants allege error in the trial court's failure to instruct the jury on plaintiff's duty to mitigate his damages through proper treatment of the knee injury. Defendants had requested Minnesota Jury Instruction Guide, Instruction 164, which reads:

"In determining the amount of damages the [claimant] may recover for his injuries, you should consider that one who is injured has a duty to act reasonably in obtaining treatment in caring for his injury. He is limited to those damages which he would have suffered if he had acted reasonably in obtaining treatment and care.

*"There is no duty to submit to a major surgical operation."* (Italics supplied.)

Apparently defendants did not request the italicized portion of the instruction.

Defendants' contention that the requested instruction should have been given is essentially premised on the belief that plaintiff's damages should not include amounts for future disability when the knee injury can be corrected with surgery.

The rule in Minnesota is that a person injured by the wrongful act or omission of another has a duty to mitigate damages by exercising reasonable precaution in the care and treatment of such injury. If he does not exercise such precaution, he cannot recover damages resulting from such lack of precaution. Beck v. Chicago, M. & St. P. Ry. Co. 134 Minn. 363, 159 N. W. 831 (1916); Patterson v. Blatti, 133 Minn. 23, 157 N. W. 717 (1916); Kesich v. Oliver Iron Min. Co. 188 Minn. 173, 246 N. W. 672 (1933). In Beck v. Chicago, M. & St. P. Ry. Co. *supra*, the court upheld an instruction to the following effect: In the plaintiff's efforts to heal the wound or prevent an extension or aggravation of the injury, plaintiff was bound by the rule of reasonable care, and if he exercised such care, the fact that he may have erred would not necessarily deprive him of the right to recover.

The doctrine of mitigation does not require the injured party to submit to a major surgical operation. He may choose to bear his affliction and be compensated for it. Butler v. Whitman, 193 Minn. 150, 258 N. W. 165 (1934); Perry v. Chicago G. W. Ry. Co. 152 Minn. 398, 188 N. W. 1002 (1922); Gibbs v. Almstrom, 145 Minn. 35, 176 N. W. 173 (1920); Maroney v. Minneapolis & St. L. R. Co. 123 Minn. 480, 144 N. W. 149 (1913); Otos v. G. N. Ry. Co. 128 Minn. 283, 150 N. W. 922 (1915).

In the year 1913, this court observed in Maroney:

"* * * Whether plaintiff should submit to a *major surgical operation* for an internal malady is a question for her alone to determine. *Such operations involve a known risk,* which she alone must bear. Defendant is in no position to complain that plaintiff has seen fit to suffer from her ailment rather than to submit to such an operation. Neither can the court or jury pass upon the

wisdom of her choice. *The chances of the operating table, in such a case, are too grave,* to require of plaintiff that she take this course to lessen her damage, or to permit any consideration of such a prospect as a means of determining what damage she has sustained." (Italics supplied.) 123 Minn. 482, 144 N. W. 150.

This court has also held that a person is under no obligation to submit to surgery when the prospect of success is uncertain or when there is a chance of unsatisfactory results. Perry v. Chicago G. W. Ry. Co. *supra;* Otos v. G. N. Ry. Co. *supra.*

Other jurisdictions echo these views in not requiring a person to submit to surgery involving substantial risks in order to mitigate damages. Annotation, 48 A. L. R. 2d 346, 366. These decisions similarly refer to the hazards inherent in surgery by describing the operation in various terms, including serious, critical, major, possibly fatal, dangerous, and speculative. Other factors which courts have considered are the pain involved, the possibility of success, unreasonable expense and effort, and the need for anesthesia.

On the other hand, some courts have held that a jury can consider whether a person is entitled to disability damages when the condition could be corrected through treatment which was simple, safe, and unattended with risks of failure or death, e.g., to correct fractured or dislocated bones. Among these cases is Jenkins v. American Auto. Ins. Co. 111 So. 2d 837 (La. App. 1959), where the court held that an operation to remove torn knee cartilage was a comparatively simple operation unattended by unusual risks and enjoying a reasonable certainty of success. The court stated (111 So. 2d 840):

"It is not the province of this court to advise or suggest that a party litigant submit to any sort of surgical operation, and, certainly, it is far beyond any consideration that a court should order a litigant to submit to an operation. However, we do not deem it either just or equitable to compel the payment of substantial damages by a party defendant upon the basis of a continued

disability which could, within reasonable expectation, be relieved."

Accord, Stark v. Shell Oil Co. 450 F. 2d 994 (5 Cir. 1971) (applying Louisiana law).

In Bartunek v. Koch, 404 Pa. 1, 170 A. 2d 563 (1961), the jury was charged that if plaintiff's knee injury could be relieved by simple surgery to which an ordinarily prudent man would submit, then damages must be so limited. Quoting from a previous Pennsylvania decision, the court observed (404 Pa. 4, 170 A. 2d 565):

"* * * The plaintiff of course was entirely at liberty to refuse to submit to an operation, but if the effect of his refusal would be to retain permanently a condition which might be removed by a simple operation, which an ordinarily prudent man would, under the circumstances, undergo, that matter should certainly be taken into consideration by the jury, in estimating the damages. No compensation should be allowed for damages that might reasonably be averted."

In Patterson v. Blatti, 133 Minn. 23, 27, 157 N. W. 717, 718 (1916), defendant requested the court to instruct the jury as follows:

"If you find in this case that the injuries to plaintiff's thumb complained of by him in this action, were inflicted by defendant in the fight testified to by the witnesses, but that the injury thereto was afterwards aggravated by the carelessness and neglect of the plaintiff to properly care for and treat the same or to have the same properly treated or attended to, defendant cannot be held liable in this action for any damages or injuries thereto, caused by, or resulting from, such carelessness and neglect on the part of the plaintiff."

This court said that the instruction was correct in the abstract but commented on the actions of the plaintiff in caring for his injuries as follows: "It cannot be said that plaintiff did not act

as a reasonably prudent person would under the same circumstances." 133 Minn. 27, 157 N. W. 718. Thus, in suggesting a reasonably-prudent-person rule, the rationale of this court in the past has not been too different from that expressed in Bartunek some 45 years later.

Medical science has made many advances since we last considered this question. Operations and treatments which formerly involved grave risks are now relatively free from hazards and enjoy great success. There remain instances where the hazards may be so evident that there would be no duty as a matter of law to submit to such surgery. Similarly, there may be other treatments or operations which are so free from danger that as a matter of law a person would be under a duty to submit to them or have his damages limited.

While in this opinion we merely highlighted the medical testimony, we have carefully scrutinized all of it and have concluded that as a matter of law the knee operation recommended by Dr. Goodman was not a "major operation" as that term is used in Instruction 164.

Although the form of the instruction requested by defendants was not as complete as the case required, the trial court, based on the then-applicable case law and the advances in medical science, should have given Instruction 164 in its entirety. The jury should have been permitted to consider this facet of the case in determining damages for permanent disability and future losses which would result from the knee condition.

It seems appropriate at this time to examine the particular instruction in question. The advances in medicine are such that the term "major surgery" as used in that instruction is too indefinite. Either a jury should be given a definition of "major surgery" or that term should be dropped and a different instruction be given.

We think the best solution is to propose an instruction based on the rationale of Patterson and Bartunek, and accordingly

direct that the following instruction, at least in substance, be used in this case:

If you find that the injuries suffered by Couture can be alleviated by a surgical operation and that a reasonably prudent person would undergo such an operation, under all of the circumstances in this case, then such a finding should be taken into consideration by you as a factor which would reduce the amount of damages to which Couture would otherwise be entitled.

Because we hold that a proper instruction on mitigation of damages through surgery should have been given and remand the case for a new trial, it is unnecessary to reach defendants' second issue concerning the amount of the verdict.

Reversed and remanded for a new trial on the issue of damages only.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.