INDEPENDENT SCHOOL DISTRICT NO. 622, Respondent,

v.

KEENE CORPORATION (successor-in-interest to Baldwin–Hill Company, Baldwin–Ehret–Hill Company and Keene Building Products Corporation), Petitioner, Appellant.

No. C7–91–234.

Supreme Court of Minnesota.

Jan. 14, 1994.

Rehearing Denied Feb. 25, 1994.

David F. Herr, Cooper S. Ashley, Mary R. Vasaly, Mark W. Lee, Maslon, Edelman, Borman & Brand, Minneapolis, for appellant.

Michael R. Sieben, Harvey N. Jones, Michael R. Strom, Sieben, Polk, LaVerdiere, Jones & Hawn, P.A., Hastings, and Edward J. Westbrook, J. Anderson Berly, III, Ness, Motley, Loadholt, Richardson & Poole, P.A., Charleston, SC, for respondent.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for amicus curiae, MN Defense Lawyers Ass'n.

PAGE, Justice.

Keene Corporation (Keene) challenges a decision of the court of appeals affirming a judgment entered pursuant to a jury verdict and the trial court's denial of Keene's alternative motions for judgment notwithstanding the verdict and for a new trial. 495 N.W.2d 244. The school district seeks restoration of the punitive damage award which the court of appeals reduced by one-half.

In 1969, Independent School District No. 622 (school district) contracted with Bor–Son Construction Company (Bor–Son) to build Tartan High School. Corwin, Seppanen & Associates, Inc. (Corwin), the school district's architect, worked with Bor–Son on the specifications for the project, and included within the specifications a list of brands of fireproofing material to be used. Insulation Sales Company (ISC), the subcontractor hired to install the fireproofing material, installed Pyrospray, a brand not included in Corwin's original specifications, but which satisfied Corwin's main concern that the fireproofing material used keep steel beams from collapsing in a fire for at least two hours. Pyrospray is an asbestos-containing product which was produced by Keene.

In 1980, the Environmental Protection Agency (EPA) published proposed rules recommending that school districts survey their buildings for asbestos. The school district followed the EPA recommendation in December 1980, and, as a result, found the presence of asbestos at Tartan. Pyrospray was the source of the asbestos. Air samples indicated that the air was within OSHA standards. In 1981, a survey by Tartan's maintenance staff found heavy deposits of friable [1] asbestos above the suspended ceilings at Tartan with some of the material having dropped onto the ceiling. Corwin informed the school district that there were two options available to address the asbestos problem at Tartan. The school district could either encapsulate or remove the Pyrospray. Because of the expense involved with both choices, the school district chose to wait until more infor-

mation was available on how best to deal with the asbestos contamination.

In 1983, the school district embarked on an asbestos removal program calling for the removal of the Pyrospray in stages over the course of eight summers. The school district undertook a phased removal to avoid the costs and disruption connected with closing Tartan for the period of time necessary for complete removal. During the following summers the fireproofing was removed, with the exception of 1986. In that year the school district postponed the removal because no contractor could obtain bonding in a timely manner. The program was completed in 1991.

At trial, the school district argued that Keene knew of the health hazards of asbestos prior to selling Pyrospray to the school district. In support of this argument, the school district presented evidence establishing that: Keene's predecessor, Baldwin–Ehret–Hill (BEH), was a member of the Sprayed Mineral Fiber Manufacturers Association (SMFMA), an organization which, among other things, worked to control negative publicity concerning the health hazards of asbestos; Keene received information from SMFMA after its acquisition of BEH; and, in 1968, Keene considered marketing an asbestos-free fireproofing product, with an advertising campaign focusing on the health hazards associated with asbestos, but ultimately decided against doing so because Keene concluded that marketing an asbestos-free product offered it no competitive advantage.

In 1984, the school district filed suit in Washington County District Court against Keene, Bor–Son, Corwin, and ISC, seeking recovery of the cost of the asbestos removal and punitive damages. The school district's complaint alleged negligence, strict liability, breach of implied warranties, breech of express warranties, fraud, restitution, and conspiracy. The school district settled with Bor–Son, Corwin, and ISC prior to trial. Before trial the court dismissed the restitution and conspiracy claims on summary judg-

---

1. Friable refers to material which can be crumbled, pulverized, or reduced to powder in the hand.

ment; found as a matter of law that the fireproofing material in Tartan was Pyrospray; and denied Keene's motion to bifurcate the compensatory damage and punitive damage claims.

The trial commenced on September 11, 1990, and concluded after approximately 19 days of trial, 17 witnesses, and 117 exhibits, ultimately generating 2624 pages of transcript. After both parties rested, the trial court refused to include questions on the special verdict form concerning the school district's and other parties' comparative fault, and also refused to instruct the jury on the school district's duty to mitigate damages.

The jury returned a verdict in favor of the school district on all counts and awarded $820,750 for compensatory damages and $2,462,250 for punitive damages. The trial court denied Keene's alternative motions for judgment notwithstanding the verdict or a new trial, and Keene's motion to set aside the punitive damage award. On February 2, 1993, the court of appeals issued its opinion cutting the punitive damage award by half and affirming the trial court in all other respects.

The first issue to be considered is whether the trial court erred by refusing to submit to the jury the issue of the comparative fault of the school district, ISC, Bor–Son, Corwin, and Johns–Manville,[2] as well as the school district's failure to mitigate damages. This issue involves a mixed question of law and fact, and, therefore, is subject to our independent review. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

Keene argues that it was error under Minn.Stat. § 604.01, subd. 1 (1990), for the trial court to refuse to include questions on the special verdict form concerning ISC's, Bor–Son's, Corwin's, and Johns–Manville's comparative fault after it properly requested the trial court to do so.

■ Minn.Stat. § 604.01, subd. 1 (1990) reads:

The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each party.

The mandatory language of section 604.01 must be read in conjunction with our decisions holding that an issue may not be presented to the jury unless evidence has been introduced reasonably tending to prove the issue's existence. *See, e.g., Oltmans v. Orthopaedic and Fracture Clinic, P.A.*, 278 N.W.2d 538, 541 (Minn.1979). Therefore, before a trial court may submit the issue of a party's fault to the jury, pursuant to Minn. Stat. § 604.01, evidence must exist tending to demonstrate the party's fault.

■ Our examination of the record shows no evidence tending to demonstrate any fault on the part of ISC, Corwin, Bor–Son or Johns–Manville. There was no evidence presented establishing that the Pyrospray was improperly installed[3] or that ISC, Bor–Son, or Corwin had knowledge of Pyrospray's potential hazards to Tartan occupants. Further, the record lacks any evidence regarding Johns–Manville. Keene argues that the trial court improperly excluded evidence concerning Johns–Manville, and that this excluded evidence would have demonstrated Johns–Manville's fault. Evidentiary rulings are in the sound discretion of the trial judge "and will only be the basis for reversal where that discretion has been clearly abused." *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983). We find no abuse of discretion here. Even if the excluded evidence had been admitted at trial, there still would not have been sufficient evidence to submit Johns–Manville's fault to the jury because it did not tend to establish any fault on the part of Johns–Manville. As there is no evidence in the record tending to establish any fault on the part of ISC, Bor–Son, Corwin, or Johns–Manville, we affirm the court of appeals' decision with respect to Keene's request for a comparative fault instruction.

---

**2.** Keene alleges that Johns–Manville products containing asbestos were used in the construction of Tartan, and that Johns–Manville supplied asbestos to BEH.

**3.** Keene alleges that ISC failed to properly clean surfaces of Pyrospray after installation, thus resulting in "overspray." However, the record does not support the conclusion that this "overspray" demonstrated fault by any party.

Minn.Stat. § 604.01, subd. 1a, in part, defines "fault" as the "unreasonable failure to avoid an injury or mitigate damages." Keene argues that it "pled and proved" that the school district "acted and failed to act" in ways which failed to mitigate damages, and therefore, the trial court was required to submit the school district's comparative fault to the jury. With respect to mitigation, the statute appears to contemplate actions by the injured party, here the school district, which at the time the injury occurred would have limited damages. Under the facts of this case, short of refusing to permit the installation of Pyrospray, there was nothing that the school district could have done to reduce the damage at the time of installation. The school district had no independent reason to know that Pyrospray was a problem, and clearly Keene did nothing to inform the district of the dangers associated with Pyrospray. Thus, there was nothing to submit to the jury on the school district's comparative fault.

█ Keene also argues that the jury should have been instructed on the school district's common law duty to mitigate damages. An injured party has the "duty to mitigate damages by exercising reasonable precautions in the care and treatment" of the injury. *Couture v. Novotny,* 297 Minn. 305, 309, 211 N.W.2d 172, 174 (1973). Here, the question is whether the school district exercised reasonable care in curing its injury after the injury had occurred.

This case does not involve the aggravation of, or failure to cure, an injury. The school district's actions effectively eliminated the hazard from Tartan, and caused no additional damage. Keene presented no evidence showing that removal was not an effective treatment of the school district's injury. Keene argues, though, that had the school district taken different measures to cure its injury, such as encapsulation or removal all at once rather than in stages, the school district could have cured its injury less expensively. This, according to Keene, amounts to a failure to mitigate damages.

We have never held that a party has a duty to choose the lowest cost option to cure an injury. Therefore, Keene must show that the remedy chosen by the school district unreasonably increased the cost of curing the asbestos problem. Keene has not done so. The problem for Keene is that while it has pled and argued that the method chosen by the school district to cure the asbestos problem was unreasonable, it has not directed the court's attention to any evidence in the record supporting its argument; nor, after a thorough review of the voluminous record has the court been able to find any such evidence. Simply raising the issue of failure to mitigate is not enough. There must be some evidence in the record tending to show that the conduct of the school district was unreasonable.

Keene argues that the school district acted unreasonably in a number of ways. First, Keene argues that evidence shows the school district unreasonably waited to begin abatement of the asbestos, and that during the waiting period the cost of removal increased. The evidence shows the school district, in abating the asbestos problem, followed a course of conduct appropriate for the circumstances, consulting with both private and government experts and following government regulations. No evidence shows that the school district's course of conduct in beginning the removal project when it did was unreasonable.

Second, Keene argues that encapsulation would have been less expensive than removal. Keene presents no evidence that removal of the asbestos was not an effective method to cure the school district's injury or that encapsulation was a better method. While removal is permanent, evidence presented at trial indicates that encapsulation requires an ongoing care and maintenance program and the repeating of the encapsulation every ten years. Furthermore, evidence at trial suggested encapsulation was inappropriate for the type of material involved in this case. On this record, it is not clear that in the long-run encapsulation is less expensive. We find no evidence tending to show the school district was unreasonable in choosing to remove the asbestos. Keene cites *Couture,* 211 N.W.2d at 176, as supporting its position. In that case the trial court erred by refusing to submit the issue of mitigation of damages to

the jury where the plaintiff refused to have surgery to alleviate his injury. Here, however, unlike the situation in *Couture*, the school district had its "surgery" and effectively cured its injury.

Keene's third argument is that the school district's decision to take a phased approach rather than removing all of the asbestos at once was unreasonable. The record reflects that the cost of removal increased over the years, and, therefore, the cost of removal would have been less had the school district removed all of the asbestos at one time; however, the record also reflects that removal all at once would have created other tangible and intangible costs and difficulties, such as those connected with closing the high school and relocating students, teachers, and activities. We find no evidence in the record tending to demonstrate that the school district's decision to forego incurring these costs and difficulties was unreasonable. The school district's duty, when it decided to cure its injury, was not to seek out and undertake the lowest cost method possible to treat its injury, but only to exercise reasonable care in curing its injury. We find that the evidence indicates the school district fulfilled this duty, and we find no evidence suggesting otherwise. Therefore, the trial court properly refused to give a jury instruction on the school district's duty to mitigate damages.

Keene next challenges the award of punitive damages to the school district. In *Eisert v. Greenberg Roofing & Sheet Metal Co.*, 314 N.W.2d 226, 228 (Minn.1982), we held that punitive damages could not be recovered in a strict products liability action where the plaintiff only suffers property damage. Keene argues that the policy concerns underlying *Eisert* apply in this case, and therefore the school district's recovery of punitive damages should be barred.

■ The school district argues that *Eisert* only applies to strict liability claims, and, therefore does not apply to this case because the school district brought claims under lia-

bility theories beyond strict products liability. We do not find this to be a sufficient distinguishing factor to limit the application of our reasoning in *Eisert*. As in *Eisert*, the school district here only suffered property damage. The remedy of punitive damages concerns the "vital state interest of protecting persons against personal injury," *Gryc v. Dayton–Hudson Corp.*, 297 N.W.2d 727 (Minn.), *cert. denied sub. nom. Riegel Textile Corp. v. Gryc*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980). We believe now as we did in *Eisert* that denying punitive damages where a plaintiff only suffers property damage reflects the greater importance society places on protecting people. We reverse the award of punitive damages in its entirety.[4]

Keene also challenges summary judgment entered on the product identification issue. Our examination of the record, however, demonstrates that Keene failed to present any evidence raising a genuine issue of material fact. *See* Minn.R.Civ.P. 56.03; *Thiele v. Stich*, 425 N.W.2d 580 (Minn.1988).

■ Finally, in its shotgun approach to this appeal, Keene alleges a multitude of purported trial errors which "ruined the trial and deprived Keene of a fair trial." We have thoroughly reviewed the record and find that the court of appeals properly disposed of these purported errors. Ordinarily, given our disposition of the comparative fault and punitive damage issues, a summary dismissal would be sufficient for these ancillary issues. But, given the manner in which these issues were raised, some comment is appropriate. Keene raised nine issues in the last five pages of its initial fifty-page brief.[5] With eight of them, Keene set out the issue in a sentence or two and then referred the court to its court of appeals brief for the discussion. This is a novel, but nonetheless unacceptable attempt to expand the page limitation for appellate briefs set out in Rule 132.-01, subd. 3 (1992) of our Rules of Civil Appellate Procedure. To be absolutely clear, if

---

4. As to the many alleged trial court errors which Keene raises relating to the award of punitive damages, we decline to consider these because our disposition of the punitive damage issue renders them moot.

5. Keene also submitted a twenty-five-page reply brief which was not "confined to new matter raised in the brief of the respondent" as required by Rule 128.02, subd. 3 (1992).

these issues were important enough to have been reviewed, they should have been set forth with specificity within the ample page limit our rules permit. As it is, having these issues before the court in the manner in which they were raised has not been at all helpful in reviewing Keene's petition.

Affirmed in part and reversed in part.