M. Jay JENSEN, an individual, Patricia A. Jensen, an individual, William Spooner, an individual, and Celeste Spooner, an individual, petitioners, Appellants,

v.

James V. WALSH, an individual, Patricia Walsh, an individual, and Timothy Schacher, Respondents.

No. C4–99–1763.

Supreme Court of Minnesota.

March 22, 2001.

Brian N. Toder, Chestnut & Cambronne, P.A., Minneapolis, for appellant.

John M. Gearin, St. Paul, for respondent Jensen.

Timothy Schacher, South St. Paul, pro se.

Jeffrey J. Lindquist, Minneapolis, for amicus curiae Minnesota Defense lawyers Ass'n.

Charles A. Bird, Steven S. Fuller, Rochester, for amicus curiae Minnesota Trial Lawyers Ass'*n.

## OPINION

### RUSSELL A. ANDERSON, Justice.

In this bitter dispute between neighbors, we consider whether punitive damages are available in an action for intentional damage to property where the only damage is to property. We hold that a plaintiff may seek punitive damages in an action for intentional damage to property. We reverse the court of appeals and remand to the district court.

Appellants M. Jay and Patricia Jensen and respondents James and Patricia Walsh owned land adjacent to one another along a channel of the Mississippi River. The Jensens lived in their houseboat, moored along the bank of the channel, and rented the house on their property to appellants William and Celeste Spooner. William Spooner is Patricia Jensen's nephew. The Walshes maintained that the Jensens' houseboat restricted their access to the river.

Respondent Timothy Schacher, a business associate of respondent James Walsh, admitted that the following acts occurred in the summer of 1996 in an effort to drive the Jensens from the property or, at least, to convince them to remove the houseboat. James Walsh and Schacher stole the Jensens' electric meter and Schacher cut the Jensens' telephone line. Early in the morning of the day that the Spooners were to be married at the Jensen property, Schacher and Patricia Walsh's daughter, S.W., apparently with Patricia Walsh's knowledge, spray-painted an obscenity and "welcome" on the Jensens' garage and threw eggs against the houseboat and other property. Schacher and S.W. took the Walshes' cordless drill and S.W. used the drill to puncture tires on vehicles parked at the Jensen property. In addition, James Walsh pleaded guilty to disorderly conduct for operating his boat in an alarming manner near the Jensens' houseboat.

The Jensens [1] brought an action against the Walshes and Schacher for intentional

---

1. All appellants will be collectively referred to hereafter as "the Jensens."

damage to property and intentional infliction of emotional distress. The district court granted the Walshes' motion for partial summary judgment, dismissing the Jensens' emotional distress claim. The Jensens later moved to amend their complaint to include a claim for punitive damages and the district court denied the motion, concluding that punitive damages are not available where the only damage is to property.[2] Before trial, the parties stipulated to a settlement for the property damage with the Walshes and Schacher paying damages of $5,765 to the Jensens. The stipulation, however, reserved the Jensens' right to appeal both the partial summary judgment dismissing their emotional distress claim and the district court's order denying their motion to amend their complaint to include a claim for punitive damages. The court of appeals affirmed the partial summary judgment dismissing the Jensens' emotional distress claim and the order denying the Jensens' motion to amend their complaint to include a punitive damages claim, concluding that punitive damages were not available in the absence of personal injury.

 The only issue on appeal to this court is the legal issue of whether punitive damages are available in an action for intentional damage to property where the only damage is to property. We review legal issues de novo. *See Marzitelli v. City of Little Canada*, 582 N.W.2d 904, 905 (Minn.1998).

 Two lines of authority converge to form our analysis of the issue, our common law and our statutory law, specifically the punitive damages statute, Minn.Stat. § 549.20 (2000). The statute was intended to codify our common law on punitive damages. *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 891 (Minn.1986).

We begin with a brief review of the availability of punitive damages under our common law, limiting our inquiry to actions where the only damage is to property. Beginning nearly 140 years ago, we permitted punitive damages claims in actions where the only damage is to property, recognizing a centuries-old philosophy that one committing a tort with a fraudulent or evil motive should be punished and that the offender and others should be deterred from such behavior in the future. *See Lynd v. Picket*, 7 Minn. 128 (Gil. 128, 142–43) (1862). In *Lynd*, we upheld a punitive damages award against a deputy sheriff who confiscated property that he knew was exempt from the writ of attachment he executed. *Id.* at 143–44. In our decision, we acknowledged the longstanding purpose of punitive damages, to punish willful and malicious conduct that is intended to harass and oppress another. *See id.* at 143.

From the end of the nineteenth century to more recent times, it has been well-established that punitive damages were available in actions where the only damage is to property. *See Hendrickson v. Grengs*, 237 Minn. 196, 205, 54 N.W.2d 105, 110 (1952) (holding wrongful taking of mortgaged property in violation of injunction provided strong grounds for punitive damages); *Matteson v. Munroe*, 80 Minn. 340, 342–43, 83 N.W. 153, 154 (1900) (affirming award of punitive damages for malicious and willful taking of exempt grain); *Carli v. Union Depot St. Ry. & Transfer Co.*, 32 Minn. 101, 104, 20 N.W. 89, 90 (1884) (allowing punitive damages for trespass to real estate where trespass is wanton, willful or malicious). In 1971, we again emphasized the strong public policy of punishing those who maliciously, willfully or with reckless disregard convert another's property when we affirmed a punitive damages award against a defendant who sold a neighbor's calves that had wandered onto defendant's property. *See Huebsch v. Larson*, 291· Minn. 361, 364, 191 N.W.2d 433, 435 (1971). Our common

---

**2.** Upon commencement of a civil action, a complaint cannot include a claim for punitive damages. After filing suit, a party may move to amend the pleadings to include a claim for punitive damages. Minn.Stat. § 549.191 (2000).

law demonstrates that punitive damages have been available to punish defendants and to deter defendants and others from maliciously damaging the property of another.

As our common law developed, the number of punitive damages awards in product liability cases increased. *See* Gary T. Schwartz, *Deterrence and Punishment in the Common Law of Punitive Damages: A Comment,* 56 S.Cal.L.Rev. 133, 150 (1982) (identifying a surge in punitive damage awards in cases alleging defective product design and citing cases from 1978 to 1982); Dianne C. Heins, *Statutory Changes in Minnesota Tort Law—1978,* Henn. Lawyer, Sept.-Oct.1978, at 6 (noting that the Minnesota legislature enacting the punitive damages statute was concerned over the increasing frequency and amount of punitive damages awards in product liability cases). By the mid 1970s, product liability insurance was in crisis over increased punitive damages claims and losses. *See* David G. Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich.L.Rev. 1257, 1309 (1976).

Against this backdrop of concern over the increasing number of punitive damages awards in product liability cases, our legislature enacted section 549.20 in 1978. *Minnesota–Iowa Television Co. v. Watonwan T.V. Improvement Ass'n,* 294 N.W.2d 297, 310–11 (Minn.1980).

The statute enacted in 1978 reflected an intent to limit punitive damages in civil actions by making the remedy available "only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1978). The statute was amended in 1990 to substitute "deliberate disregard" for "willful indifference." The 1990 amendment further limited punitive damages by defining deliberate disregard.[3]

In two product liability cases since enactment of the statute, we have limited the availability of punitive damages for actions where the only damage is to property. In the first case, we determined that punitive damages are not available in strict product liability cases where the only damage is to property. *Eisert v. Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 228–29 (Minn.1982). In *Eisert,* a school district's auto body shop was destroyed by fire and the school district brought a strict liability action against the manufacturers of foam and paint used in the auto body shop. The only damage was to property. *Id.* at 227. The district court denied the school district's motion to amend its complaint to include a punitive damages claim. *Id.* We acknowledged that the nature of the plaintiff's injury was not a factor listed in section 549.20, subd. 3, for determining how to assess punitive damages, but we concluded that the nature of the injury could be considered in deciding where punitive damages would be allowed. *Eisert,* 314 N.W.2d at 229. We affirmed the district court, supporting our conclusion with the observation that the "interests implicated in strict liability actions for injury solely to property are not so great as to warrant extension of this controversial remedy * * *." *Id.*

In the second product liability case, a school district facing costly removal of fireproofing material brought suit against an asbestos producer under theories of negligence, strict liability, breach of implied warranties, breach of express warranties, fraud, restitution and conspiracy. *Independent Sch. Dist. No. 622 v. Keene Corp.,*

---

**3.** A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

 (1) deliberately proceeds to act in conscious or intentional disregard of the

high degree of probability of injury to the rights or safety of others; or

 (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn.Stat. § 549.20, subd. 1(b) (2000).

511 N.W.2d 728, 729 (Minn.1994). After the restitution and conspiracy claims were dismissed, the jury awarded punitive damages and the district court denied defendant's motion to set aside the punitive damages award. *Id.* at 729–30. The court of appeals affirmed but reduced by half the punitive damages award. *Id.* On appeal to this court, we rejected the school district's argument that *Eisert's* bar to punitive damages for property damage was limited to strict product liability actions and reversed the award of punitive damages. *See id.* at 732.

Thus, in *Eisert* and *Keene,* we concluded that denying punitive damages in product liability cases where the only damage is to property "reflects the higher value our society places on the safety of persons than it does on the security of the property." *Eisert,* 314 N.W.2d at 229; *see also Keene,* 511 N.W.2d at 732. We did not conclude, however, that the security of property is unimportant, nor did we intend that punitive damages claims be barred in all actions where the only damage is to property.

The controversy surrounding punitive damages reflected a view that such awards in product liability actions did not necessarily advance society's interests. *See Eisert,* 314 N.W.2d at 229 (characterizing punitive damages as a controversial remedy and noting public interest in protecting against property damage largely satisfied through compensatory damages); *see also* Jane Mallor and Barry Roberts, *Punitive Damages: Toward a Principled Approach,* 31 Hast. L.J. 639, 643–47 (1980); William L. Prosser & W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 2, at 11 (W. Page Keeton et al. eds., 5th ed.1984) (noting punitive damages condemned as giving undue compensation). Some thought that the threat of large punitive damages awards in product liability actions may prevent the introduction of beneficial products to the marketplace and impede research and development of new products. *Browning–Ferris Indus., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 282, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (O'Connor, J., concurring and dissenting).

While *Eisert* and *Keene* reflect an intent to control escalating lawsuits and awards in product liability actions where the only damage is to property, other claims of property damage may be protected through an award of punitive damages. Section 549.20 allows punitive damages where there is deliberate disregard of the rights *or* safety of others. Minn.Stat. § 549.20, subd. 1. Use of the disjunctive "or" indicates that the legislature intended to safeguard rights other than those relating to a person's safety. Therefore, section 549.20 does not limit its application to claims of personal injury.

 The purposes of punitive damages are to punish the perpetrator, to deter repeat behavior and to deter others from engaging in similar behavior. William L. Prosser & W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 2, at 9. Without punitive damages, one who acts with deliberate disregard of the rights or safety of others faces no greater penalty than a well-meaning but negligent offender. It is therefore appropriate, in determining whether punitive damages should be allowed, to focus on the wrongdoer's conduct rather than to focus on the type of damage that results from the conduct.

 A plain reading of section 549.20 indicates that the legislature intended to allow punitive damages when there is clear and convincing evidence that a defendant acted with deliberate disregard for the rights *or* safety of others regardless of the nature of the resulting damage. Thus, we hold that a plaintiff may seek punitive damages in an action for intentional damage to property where the only damage is to property, subject to the limitations of section 549.20.[4]

4. We recognize that the school district in *Keene* brought claims other than strict product liability, including negligence, breach of implied and express warranties, and fraud.

We reverse the court of appeals and remand this case to the district court for reconsideration of the Jensens' motion to amend their complaint to include a claim for punitive damages, subject to the criteria set forth in Minn.Stat. § 549.20.

Reversed and remanded.

511 N.W.2d at 729. While the syllabus in *Keene* indicates that punitive damages are not available in a product liability claim where the only damage is to property, the theory on which the jury based its award in *Keene* is not apparent from the opinion. To the extent that *Keene* can be construed to bar punitive damages in an action for intentional damage to property where the only damage is to property, it is overruled.