*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1738**

Kaytee Hooser, et al.,
Respondents,

vs.

Keith Anderson,
Appellant.

**Filed April 25, 2016
Affirmed
Cleary, Chief Judge**

Big Stone County District Court
File No. 06-CV-12-62

Ronald R. Frauenshuh, Jr., Ortonville, Minnesota (for respondents)

David C. McLaughlin, Fluegel, Anderson, McLaughlin & Brutlag, Chartered, Ortonville, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Cleary, Chief Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

On appeal after remand in this landlord-tenant dispute, appellant Keith Anderson challenges a punitive-damages award in favor of respondents Kaytee Hooser and Garrett

Heisinger, arguing that the award does not meet the requirements of Minn. Stat. § 549.20 (2014). Because the district court did not abuse its discretion in approving punitive damages, we affirm.

**FACTS**

Respondents rented a home from appellant from November 2010 until September 2011. After respondents moved in, they observed a number of significant problems with the house, which they asked appellant to repair. When appellant failed to fix the problems, respondents stopped paying rent. Appellant attempted to evict respondents, but an eviction court ordered that respondents could retain possession of the house without paying rent until appellant made the necessary repairs. Appellant then began showing the house to prospective buyers. Respondents complained that appellant or prospective buyers regularly came to the house without giving them advance notice. Before long, appellant informed respondents that he had sold the house and that they must move out. Respondents removed most of their belongings, but when they returned to the house to retrieve a few of their remaining items, they found they were locked out. Respondent Heisinger called appellant, who came to the house with a baseball bat. Respondent and appellant began arguing, and appellant struck Heisinger with the bat.

One day later, appellant went to respondent Hooser's place of employment, which was an assisted-living facility where appellant's parents lived. Appellant told his parents that respondent Hooser's boyfriend had beat him up and that she should not be allowed to care for them. Respondent Hooser quit her job a short time later. She

2

testified at trial that her employer told her that she was not allowed to care for appellant's parents or any other residents living in the same wing of the facility and that, as a result, she was humiliated.

Respondents filed suit against appellant for battery, conversion, invasion of privacy, and defamation. The district court granted their motion to amend the complaint to request punitive damages. Appellant represented himself during the two-part jury trial. The jury awarded respondents a total of $44,000 in actual damages and $55,000 in punitive damages. The district court entered judgment in these amounts, and appellant appealed.

The court of appeals affirmed the award of actual damages for invasion of privacy, battery, and defamation in the amount of $41,500 and reversed the actual and punitive damages awarded for conversion. *Hooser v. Anderson*, No. A14-1055, 2015 WL 1959898 (Minn. App. May 4, 2015). With respect to invasion of privacy, battery, and defamation, the court of appeals concluded that the punitive-damages findings were insufficient. The court of appeals held that when the district court reviewed the punitive damages associated with each claim, it made the required threshold finding that appellant had acted with deliberate disregard for the rights or safety of respondents. *Id.* But because the district court did not make specific findings on the factors provided by the punitive-damages statute, Minn. Stat. § 549.20, subd. 3, the court of appeals remanded for the district court to make those findings. *Id.*

3

On remand, the district court reviewed the punitive-damages award in light of the statutory factors, and approved the $50,000 in punitive damages awarded with respect to invasion of privacy, battery, and defamation in their entirety. Appellant appeals from that judgment.

## DECISION

Minnesota law permits punitive damages in civil actions "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a). When a fact-finder grants a punitive-damages award, the district court must review the award in light of statutory factors and make specific findings with respect to the factors. *Id.*, subd. 5. The factors bear on the purposes of punitive damages, which include punishment and deterrence. *Jensen v. Walsh*, 623 N.W.2d 247, 251 (Minn. 2001) ("The purposes of punitive damages are to punish the perpetrator, to deter repeat behavior and to deter others from engaging in similar behavior."). Punitive damages should "both punish and deter according to the gravity of the act giving rise to a punitive damage award, but an award should not exceed the level necessary to properly punish and deter." *Rosenbloom v. Flygare*, 501 N.W.2d 597, 601 (Minn. 1993) (quotation omitted).

In reviewing a punitive damages award, the district court must consider

> the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct,

4

the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons, and the severity of any criminal penalty to which the defendant may be subject.

Minn. Stat. § 549.20, subd. 3.

We review the district court's consideration of a punitive-damages award in light of these statutory factors for an abuse of discretion. *Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd.*, 329 N.W.2d 306, 312 (Minn. 1982). "A [district court] has broad discretion in determining whether to set aside a verdict as being excessive." *Mrozka v. Archdiocese of St. Paul & Minneapolis,* 482 N.W.2d 806, 813 (Minn. App. 1992), *review denied* (Minn. May 24, 1992). When reviewing the district court's specific findings with respect to the statutory factors, we give due regard to its credibility determinations and its evaluation of record evidence. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01.

In this case, the district court made the threshold finding that appellant's acts showed deliberate disregard for the rights or safety of the respondents, and appellant does not challenge that finding on appeal. Appellant argues that the district court erred when it failed to reject the punitive-damages award in light of the factors provided by the punitive-damages statute.

5

**Invasion of privacy**

On remand, the district court reviewed the two $5,000 punitive-damages awards for respondents' invasion of privacy claims. The district court made findings regarding each of the required statutory factors. Regarding "the seriousness of the hazard to the public arising from the defendant's misconduct," the court found that appellant invaded "a fundamental privacy right," which it characterized as a serious matter. The district court also explained that punitive damages are necessary to deter appellant and others from acting in a similar manner in the future, especially because appellant is a landlord to several other families. Other tenants are part of "the public" that punitive damages are designed to protect from future misconduct. *See* Minn. Stat. § 549.20, subd. 3 (enumerating factors for punitive damages, including those related to protection of the public).

The district court also considered the profitability of the misconduct to the appellant. The court reasoned that it was profitable for appellant to invade respondents' privacy because it facilitated his sale of the property. The district court considered the duration of the misconduct and any concealment of it. The court found that appellant's invasion of respondents' privacy continued during almost the entire length of their tenancy, and even after respondents' repeated requests that appellant stop coming to the house without notice. The district court credited respondents' testimony on this point.

A reviewing court is to consider "the degree of the defendant's awareness of the hazard and of its excessiveness." Minn. Stat. § 549.20, subd. 3. The district court found

6

that as a landlord, appellant should have known that tenants have a right to privacy and are entitled to notice before a landlord enters a leased premises. *See* Minn. Stat. § 504B.211, subd. 2 (2014) (requiring a landlord to make a good faith effort to give reasonable notice of intent to enter). Evidence in the record supports the court's finding that appellant should have been aware of the hazard he was creating. During trial, appellant testified that he owns other rental properties and that he has studied a landlord handbook "very, very thoroughly."

Respondent Heisinger testified that appellant told him that because appellant owned the house, he did not have to give notice to tenants when he wanted to come to the property. The district court found that no employees were involved in causing or concealing the misconduct. The court also found that appellant is capable of paying actual and punitive damages, basing its finding on appellant's testimony about his own earnings, assets, and net worth.

A reviewing court is to consider "the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons." Minn. Stat. § 549.20, subd. 3. The district court noted the jury's award of $10,500 in actual damages to respondent Hooser and $5,000 in actual damages to respondent Heisinger for their invasion of privacy claims. The court found that appellant is capable of paying these damages, but it did not discuss the total effect of punishment likely to be imposed on appellant. The district court considered the severity of any criminal penalty to which

appellant may be subject, and found that he had not faced criminal punishment for respondents' claims of invasion of privacy.

The district court considered each factor and the record provides support for the district court's findings. The district court did not abuse its discretion in approving punitive damages for appellant's invasion of respondents' privacy.

**Defamation**

The district court also reviewed the $20,000 punitive-damages award for respondent Hooser's defamation claim. The district court found that punitive damages are necessary to deter appellant from defaming future tenants. The court found that appellant had failed to see respondents as human beings with rights, so he must be deterred from treating others in the same manner. The court also expressed its concern that "[t]he conduct of defaming an individual to her employer goes to her ability to earn a living." These findings address the seriousness of the hazard to the public arising from appellant's misconduct.

The district court found that while appellant's misconduct resulted in no direct profit to appellant, he could indirectly profit from intimidating his tenants, because it could discourage them from asserting their legal rights. We have previously held that potential future harms may support a punitive-damages award, though our decision is of persuasive value only. *See McGrath v. MICO, Inc.*, No. A11-1087, 2012 WL 6097116, at *13 (Minn. App. Dec. 10, 2012) (holding that the district court's finding that a sale of shares "could have resulted in significant profitability" was not clearly erroneous and

8

supported the punitive-damages award), *review denied* (Minn. Feb. 19, 2013). In the instant case, the district court did not clearly err in finding that appellant stood to profit from the landlord-tenant power imbalance.

The district court found that appellant defamed respondent Hooser on multiple occurrences, but that each lasted for a short period of time, and appellant did not try to conceal the defamation. When it considered the degree of appellant's awareness of the hazard and of its excessiveness, the district court stated that the factor "is not really applicable." The district court previously found that defaming an individual to her employer is especially serious, as it exposes a person to financial injury. Appellant's misconduct could be considered excessive and hazardous behavior, given the district court's analysis. The district court also found that appellant was well aware of what he was doing, and that a jury could have inferred that appellant hoped to embarrass respondent Hooser, if not get her fired.

The district court stated that appellant's "attitude and conduct upon discovery was, and remained at the time of trial, completely defiant." No employees were found to be involved in causing or concealing the defamation, and the court found that appellant is capable of paying punitive damages. In considering the total effect of other punishment likely to be imposed upon appellant as a result of this misconduct, the district court found that appellant was ordered to pay $15,000 in actual damages but was not criminally punished for defamation.

The district court considered the statutory factors and made specific findings with regard to each factor. The record provides support for the district court's findings. The district court did not abuse its discretion in approving a punitive-damages award on respondent Hooser's defamation claim.

**Battery**

The district court also reviewed the $20,000 punitive-damages award for respondent Heisinger's claim for battery. The district court made the following findings in light of the statutory factors.

The district court found that appellant's misconduct presented a serious hazard to the public. It found that punitive damages are necessary to deter appellant from using physical violence to deal with future tenant disputes. It is not clearly erroneous to find that, because appellant is a landlord, he is likely to have tenants with grievances in the future. As with the defamation claim, the district court found that appellant's attack on respondent Heisinger was not directly profitable. But the district court suggested that such an attack could "deter[] [a tenant's] inconvenient assertion of bothersome legal rights."

The district court found that the duration of the battery and any concealment of it "are not factors." We understand this to mean that the misconduct did not last long, it was a one-time occurrence, and appellant did not conceal it, so the district court did not find that these factors favor the award of punitive damages. The district court did find that appellant's awareness of the hazard of his action and its excessiveness was

10

"acute." Appellant admitted that he brought the bat to the residence as a deterrent. Respondent Heisinger testified that appellant came to the house and got out of his vehicle with the bat in his hand and pointed it at respondent in a threatening manner. The district court reasoned that "anyone knows an assault can hurt someone," and found that "assault[ing] a tenant with a bat is outrageous."

The district court also found that appellant's attitude and conduct upon discovery of the battery was, again, "completely defiant." The court determined that appellant showed no remorse for the injuries he inflicted on respondent Heisinger. During trial, appellant insisted that he had been "exonerated" of the criminal charge for assault. Appellant's questions to witnesses during cross-examination also suggested that appellant viewed respondent Heisinger's injuries as exaggerated, and that appellant generally persisted in refusing to accept responsibility for the role he played in the fight. In the punitive-damages stage of the trial, appellant stated "So, I'm sorry I'm not remorseful. I did not start that fight. You know what I did? I just happen to have a bat in my pickup because we cleaned out a house." The district court's finding regarding appellant's attitude and conduct is supported by the record.

Regarding the remaining factors, no employees were found to be involved in causing or concealing the battery. The district court found that appellant was able to pay both the actual and punitive damages associated with the claim for battery. In considering the total effect of other punishment likely to be imposed upon appellant as a result of the misconduct, the district court found that appellant was required to pay

$11,000 in actual damages for the battery.  The district court does not appear convinced that the total effect of the other punishment likely to be imposed on appellant would have a sufficient punitive or deterrent effect on him.  The court noted that while appellant "pled guilty to disorderly conduct, [he] does not believe that is a punishment for this offense, and characterizes himself 'exonerated' on this charge."  This statement suggests that the district court considered the severity of the criminal penalty to be negligible.

The district court considered each required statutory factor.  Its specific findings are supported by the record.  The district court did not abuse its discretion in approving a punitive-damages award on respondent Heisinger's battery claim.

**Affirmed.**