Jeffrey L. **FREELAND**, Plaintiff,

v.

**FINANCIAL RECOVERY SERVICES, INC.**, Defendant.

Civil No. 10–03029 (PAM/TNL).

United States District Court, D. Minnesota.

June 8, 2011.

---

Thomas J. Lyons, Lyons Law Firm, P.A., Trista M. Roy, Consumer Justice Center PA, Vadnais Heights, MN, for Plaintiff.

James R. Bedell and Michael S. Poncin, Moss & Barnett, PA, Minneapolis, MN, for Defendant.

## ORDER & MEMORANDUM

TONY N. LEUNG, United States Magistrate Judge.

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Motion to Amend the Complaint to Add a Claim for Punitive Damages (Docket No. 14). A hearing was held on the motion on May 26, 2011. Trista M. Roy appeared on behalf of Plaintiff. Michael S. Poncin appeared on behalf of Defendant.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend the Complaint to Add a Claim for Punitive Damages (Docket No. 14) is **DENIED** and the attached memorandum is incorporated herein.

## *MEMORANDUM*

### I. BACKGROUND

Plaintiff Jeffrey L. Freeland alleges that Defendant Financial Recovery Services, Inc. (FRS) violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and invaded his privacy when Defendant FRS continued to contact him in an attempt to collect the debt of a third person (debtor). (Docket No. 1.) Plaintiff brings the present motion seeking an order granting leave to amend his complaint to add a claim of punitive damages in connection with his invasion-of-privacy claim. Defendant FRS opposes the motion.

Prior to April 2010, Plaintiff employed the debtor, who had incurred consumer creditcard debt. (Compl. ¶ 5.) Defendant FRS's records, the "fact sheet," show that a collection account was subsequently placed with Defendant FRS. (Docket No. 17–3, Ex. B–6.[1]) In mid-April, Defendant FRS began calling Plaintiff at his home and place of business looking for the debtor. (*Id.*) The debtor no longer worked for Plaintiff at this time. (Compl. ¶ 9.) Defendant FRS's agents would request to speak with the debtor and Plaintiff would respond that the debtor no longer worked for him and tell them not to call again. (*Id.*) Defendant FRS continued to call Plaintiff, attempting to reach the debtor. (*See generally* Fact Sheet; Docket No. 17–3, Ex. B–3 (Stmt. of Jennifer Amatya).)

Defendant "FRS then proceeded with skip-tracing, using a variety of means to verify [the] debtor's contact information." (Docket No. 23 (Mem. of Def. Opp'n Pl.'s Motion to Amend).) Defendant FRS subsequently received information from a "Ms. Juanita," confirming that the phone number it had on file for the debtor, i.e., Plaintiff's number, was indeed the debtor's number and that the name of the debtor's spouse was "Jeff."[2] (Stmt. of Jennifer Amatya.) The debtor's credit report also listed the same number. (*Id.*) Defendant FRS again called Plaintiff and asked to speak with Plaintiff's "wife." (*Id.*) Plaintiff has never been married. (Compl. ¶ 12.) Plaintiff swore at the agent and eventually hung up the phone. (Stmt. of Jennifer Amatya.) On May 3, Defendant FRS's agent called Plaintiff looking for the debtor. (*Id.*) Plaintiff demanded to speak with a supervisor and that his number be removed from Defendant FRS's file. (*Id.*; Docket No. 17–3, Ex. B–1 (Stmt. of Joshua Hickerson).) Plaintiff swore at the supervisor and ultimately hung up. (Stmt. of Joshua Hickerson.) The supervisor removed Plaintiff's numbers from the file. (*Id.*)

---

**1.** All Exhibits were submitted by Plaintiff and attached to the Affidavit of Trista M. Roy (Docket No. 17), filed in support of Plaintiff's motion.

**2.** Plaintiff's first name is "Jeffrey."

Plaintiff's number was reentered into Defendant FRS's file in June and additional calls were placed by Defendant FRS's agents to Plaintiff. (Stmt. of Jennifer Amatya; *see* Fact Sheet.) On July 22, Defendant FRS called again looking for the debtor. (Fact Sheet.) Plaintiff demanded to speak to a supervisor and explained to the supervisor that he had already spoken with several individuals; this number did not belong to the debtor; and he had initiated a lawsuit against Defendant FRS. (Docket No. 17–3, Ex. B–4 (Stmt. of Raymond Lewis).) After the call, Defendant FRS shut down the debtor's account. (*Id.*)

In discovery, Defendant FRS produced the Fact Sheet and a document entitled "call search results" (Docket No. 17–3, Exhibit B–7), which lists contacts made by Defendant FRS with Plaintiff, either at his home or place of business, and administrative functions performed by Defendant FRS's agents on the debtor's file. The transactions on the Fact Sheet are coded with letter combinations. (*See generally* Fact Sheet.) At the hearing, counsel for Defendant FRS explained the following codes: "TR," telephone residence; "TE," telephone employer; "LD" and "LM," left message; "TP," third party, no contact with debtor; and "CC," informational update. As best as the Court is able to tell, Defendant FRS made approximately 20 calls to Plaintiff in a three-month period.

## II. DISCUSSION

### A. Standard of Review

■■■ Claims for punitive damages brought in federal court that are premised on state law causes of action must conform to the requirements of Minn.Stat. §§ 549.191 and 549.20 (2008). *Olson v. Snap Prods., Inc.*, 29 F.Supp.2d 1027, 1034 (D.Minn.1998). Thus, prior to seeking punitive damages, a party must move for leave to amend the pleadings to include

such damages and "if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings." Minn.Stat. § 549.191. "A plaintiff need not demonstrate an entitlement to punitive damages *per se*, but only an entitlement to allege such damages." *Berczyk v. Emerson Tool Co.*, 291 F.Supp.2d 1004, 1008 (D.Minn. 2003). Under Minnesota law, " 'prima facie' does not refer to a quantum of evidence"; rather, "prima facie evidence is that evidence which, if unrebutted, would support a judgment in that party's favor." *Olson*, 29 F.Supp.2d at 1034 (quotations omitted). In determining whether a party has made a prima facie showing, the Court does not make any credibility determinations or consider challenges to the moving party's evidence. *Id.*

■■■ Punitive damages are permitted "only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1(a).

A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

(1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

(2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

*Id.*, subd. 1(b). Essentially, "[a] defendant operates with 'deliberate disregard' by acting with intent or indifference to threaten the rights or safety of others." *Gamma–10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir.1994). "A

mere showing of negligence is not sufficient; instead, the conduct must be done with malicious, willful, or reckless disregard for the rights of others." *Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan,* 494 N.W.2d 261, 268 (Minn.1992); *see also Jensen v. Walsh,* 623 N.W.2d 247, 251 (Minn.2001) ("Without punitive damages, one who acts with deliberate disregard of the rights or safety of others faces no greater penalty than a well-meaning but negligent offender."). The clear-and-convincing standard is satisfied when "the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others." *Olson,* 29 F.Supp.2d at 1036.

## B. Invasion of Privacy

■ One invades the privacy of another, i.e., commits the tort of intrusion upon seclusion, when he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." *Bauer v. Ford Motor Credit Co.,* 149 F.Supp.2d 1106, 1108–09 (D.Minn.2001) (quotation omitted). The "highly offensive" nature of the intrusion is generally a fact question for the jury, but a court must determine whether a certain threshold of "offensiveness" exists for the plaintiff to have a cause of action for intrusion. *Id.* at 1109; *see Fabio v. Credit Bureau of Hutchinson,* 210 F.R.D. 688, 692 (D.Minn. 2002) ("Both the State, and Federal Courts of Minnesota, have recognized that there is some objectively-based threshold degree of repugnance that is required to sustain a claimed intrusion on seclusion."). In considering the offensiveness of the intrusion, the court examines "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Bauer,* 149 F.Supp.2d at 1109. As part of its evaluation, "the court should also consider the number and frequency of the intrusive contacts." *Id.* Comments in the Restatement (Second) of Torts specifically address debt-collection efforts and point out that liability does not exist

> unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. *It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.*

Restatement (Second) of Torts § 625B cmt. d (1977) (emphasis added); *see Bauer,* 149 F.Supp.2d at 1109 (looking to the Restatement (Second) of Torts § 625B cmt. d when considering intrusiveness of collection calls to third party regarding debt of another). These principles thus instruct the Court in determining whether the alleged intrusion is so offensive as to warrant granting Plaintiff leave to seek punitive damages.

■ Plaintiff argues that Defendant FRS acted with deliberate disregard for his right to privacy, thus entitling him to seek punitive damages, when Defendant FRS continued to place calls to Plaintiff despite (1) being told that the debtor no longer worked for him, did not live in his home, and was not his wife and (2) telling Plaintiff that the number would be removed from their file. (Docket No. 16

(Mem. Supp. Pl.'s Mot. Amend).) Leave to seek punitive damages has been granted in situations in which the defendant company's attempt to collect an outstanding debt is so persistent and inescapable that it rises to the level of hounding the plaintiff. *See Zegar v. Residential Capital LLC,* No. 27–CV–08–1171 (Hennepin Cnty. Dist. Ct. Mar. 12, 2009) (leave granted when agency called over 60 times "in a period of months"); *see also Morical v. First Revenue Assurance,* No. 01–cv–409 DWF/AJB (D.Minn. Nov. 14, 2001) (leave granted when defendant placed "seven dunning calls to Plaintiff's place of work, despite her requests to stop doing so," in nine days); *but see Beard v. Bureau of Collection Recovery,* No. 08–cv–5057 DWF/FLN (D.Minn. Dec. 16, 2008) (while defendant's 13 calls to plaintiff's business phone during business hours in 11 days were "presumably annoying," conduct did not warrant punitive damages). In *Pattin v. ARS Nat'l Servs., Inc.,* No. 06–cv–3077 PJS/RLE (D.Minn. May 7, 2007), the plaintiff was allowed to seek punitive damages against a collection agency, whose representative had called the plaintiff's home, work, and cell phone a total of 28 times in 7 months. Fourteen of these calls occurred after the plaintiff sent a cease-and-desist letter. *Pattin,* No. 06–cv–3077 PJS/RLE. The representative also told the plaintiff's minor daughter that "her mommy is a bad mommy because she lied to me" and then subsequently told the plaintiff that she was a bad mother for allowing her daughter to answer the phone. *Id.*

Here, Defendant FRS placed approximately 20 calls to Plaintiff in 3 months. (*See* Fact Sheet; Call Search Results.) Although the frequency of Defendant FRS's contact varied month per month, Plaintiff received approximately five to six calls per month. While likely frustrating and inconvenient for Plaintiff, the sheer number of calls made by Defendant FRS

do not equate with the hounding that occurred in *Zegar.* Moreover, while Plaintiff, understandably, hoped to resolve the situation by informing Defendant FRS that the debtor was his former employee and did not reside with him, it can scarcely be disputed that collection agencies like Defendant FRS, at least to some degree, may well encounter individuals who falsely deny knowing the debtor or having any knowledge of the underlying debt on a regular basis; as a result, it is not unreasonable for Defendant FRS to engage in some level of follow-up to verify the accuracy of the information they are being given as a matter of course. Defendant FRS's follow-up in the instant case does not arise to the standard supporting grant of leave to amend for punitive damages.

Additionally, Defendant FRS did not blindly pursue Plaintiff. Evidence in the record shows that Plaintiff's number was listed on the debtor's credit report and Defendant FRS's contact with Ms. Juanita confirmed both the number on file as the debtor's number and the name of the debtor's spouse, which happen to be very similar to Plaintiff's. (Stmt. of Jennifer Amatya.) Thus, Plaintiff has not provided clear and convincing evidence that Defendant FRS acted in *deliberate disregard* of Plaintiff's right to privacy; Defendant FRS proceeded, albeit erroneously, on a good-faith basis that the information on file was correct. *See Lundman v. McKown,* 530 N.W.2d 807, 817 (Minn.App.1995) (recognizing good faith as a defense to punitive damages where party was mistaken as to the correctness of the party's actions).

Finally, there is no indication that Defendant FRS communicated with Plaintiff in an inappropriate manner, such as using foul or abusive language, or engaged in unseemly tactics. Therefore, for the reasons stated herein, Plaintiff's Motion to Amend the Complaint to Add a Claim for

Punitive Damages (Docket No. 14) is denied.